761 P.2d 1158

STATE of Idaho, Plaintiff–Respondent,

v.

Ronald FLINT, Defendant–Appellant.

No. 16266.

Supreme Court of Idaho.

June 30, 1988.

Rehearing Denied Sept. 29, 1988.

Ada County Public Defender, Boise, for defendant-appellant. Alan E. Trimming argued.

Jim Jones, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson argued.

BISTLINE, Justice, and OLIVER, Judge, Pro Tem.*

The defendant was charged with lewd conduct with a child under 16 years of age. The state moved for an order that defendant view the alleged victim's testimony at the preliminary hearing through closed cir-

cuit television rather than being physically present in the courtroom. Following a hearing, the motion was granted. At the preliminary hearing over defendant's objection, he was allowed only to observe the alleged victim's testimony on closed circuit television from outside of the courtroom. His attorney was allowed to remain in the courtroom and to maintain telephone contact with defendant. Defense cross-examination of the alleged victim was allowed. The magistrate found probable cause, and defendant was bound over to the district court to stand trial.

A three-day jury trial held in May 1985, ended in a hung jury. A second trial began on September 3, 1985. Unlike the preliminary hearing, defendant was present in the courtroom when the alleged victim testified. The jury retired to deliberate at 5:15 p.m. on September 5, 1985. The district court trial was presided over by the same district judge who presided at the May trial. The judge discussed with counsel the possibility that, should jury deliberations continue late into the night, the jurors be allowed to separate at about 11 p.m. in order to retire to their homes for the night, returning the next morning to further deliberate. At 12:30 a.m. the court brought the jurors in again, and with the defendant and counsel present, the court addressed the jury as follows:

Ladies and gentlemen we will excuse you for the evening. Sometimes it is helpful for everyone to have a break and let things settle for a little while. We will allow you to recess, since I have had no objection from either the state or the defense about this procedure, until 9 o'clock tomorrow. You can resume your deliberations just by going directly into the jury room and get started again as soon as all of you are present. Please don't discuss this with anyone at home who is not on the jury. You are free to discuss it when you have delivered your verdict. But until then please don't discuss it with anybody except when you are in the group deliberating and we will

---

* Oliver, J., Pro Tem, retired Sixth Judicial District Judge, sitting at the designation of the Court.

see if that helps. So I will excuse you for this evening and we will see you tomorrow and we will await your decision.

The jury resumed deliberations at 9 a.m. the next day. At about 10:20 a.m. the jury advised the court that it was unable to reach a verdict. The court brought the jury in and the following exchange ensued:

THE COURT: First I will poll the Foreperson.

Mrs. Edquist, do you feel if the jury were given more time you could reach your verdict in this case?

JUROR: No.

THE COURT: Okay. Mrs. Kunter?

JUROR: No.

THE COURT: Mrs. Carlson?

JUROR: No.

THE COURT: Miss Cook?

JUROR: No.

THE COURT: Mrs. Osborn?

JUROR: No.

THE COURT: Mr. Posey?

JUROR: No.

THE COURT: Mr. Haas?

JUROR: No.

THE COURT: Mr. McGowan?

JUROR: No.

THE COURT: Okay, Miss Richardson?

JUROR: No.

THE COURT: Mr. Sam?

JUROR: No.

THE COURT: Okay, Mr. Hall?

JUROR: No.

THE COURT: Mr. Angell?

JUROR: No.

The court then asked the counsel for both sides whether they wished to have the court give the instruction approved in the case of *State v. Bailey*, 94 Idaho 285, 486 P.2d 998 (1971). Counsel for the State responded that, "It is worth a try." Defense counsel objected to any further instruction. He stated: "I certainly don't want an instruction that might cause any juror to change its vote just to get it over with." The court then orally addressed the jury as follows:

Well of course the *State v. Bailey* instruction is not—is an approved instruction. Well I think it may be in the *interest of efficient judicial administration to read it to you* and then to allow you to advise me after I have read it and you have returned.

The court wishes to suggest a few thoughts which you may desire to consider in your deliberations along with all the instructions previously given. In your further effort to reach a verdict in this case I would suggest that in your deliberations you examine the issues submitted with the proper regard and consideration for the opinions of each other.

Each of you should fairly and freely discuss with your fellow jurors the evidence and the decisions to be drawn therefrom and you should listen to each other's arguments with an open mind. If, after doing so, any of you should be satisfied that a conclusion first reached by you was wrong and you should unhesitantly abandon that original opinion and render your verdict according to a final decision.

You should not hesitate to recede from a previously announced opinion or conclusion because of a sense of pride. Remember that you are not partisans or advocates but are judges. However you should not change the conclusion you have reached merely because one or more of your fellow jurors may have come to a different conclusion or merely to bring about a unanimous verdict.

Have in mind in your further deliberations that you will be making a *definite contribution to efficient judicial administration* if you arrive at a just and proper verdict in this case. To this end you should make every reasonable effort to reach a verdict.

I'm going to allow you to retire and continue your deliberations and advise me what you think then. But I would like you to try at least a little bit longer to see if you can reach a decision without disturbing your individual conscience in light of the fact that I know that you have all struggled for quite awhile and I

know you have all been making a good faith effort to do so.

If you can, try. If you can't then please advise me....

The members of the jury then retired to resume deliberations. Ninety minutes later they returned with a verdict of guilty.

The defendant's motion for a new trial contended that the trial court erred in allowing the jury to separate over night during deliberations, and in not declaring a mistrial when the jury declared its inability to reach a verdict the next morning. The motion was denied.

## I. THE USE OF CLOSED CIRCUIT TELEVISION AT THE PRELIMINARY HEARING

■ The initial issue raised by the defendant concerns the use of the closed circuit television at the preliminary hearing. Defendant contends that because he was denied face-to-face contact with the alleged victim, his sixth amendment right to confront the witnesses against him was violated. Where an accused's constitutional rights are violated at a preliminary hearing, any error will be held harmless only if the court is satisfied beyond a reasonable doubt that the violation did not affect the trial. *State v. Wuthrich*, 112 Idaho 360, 732 P.2d 329 (Ct.App.1986).

■ However, in this instance we are unable to evaluate the merits of defendant's claim. Defendant's notice of appeal did not specifically request that a transcript of the preliminary hearing be made part of the record on appeal. Idaho Appellate Rule 25(f) provides that "[t]ranscripts of pre-trial or post-trial proceedings shall not be included in the reporter's transcript unless specifically designated and requested." Without a record of the preliminary hearing, we are unable to determine whether the violation of defendant's sixth amendment guarantees, if any, was harmless beyond a reasonable doubt. Even without the testimony of the victim, sufficient independent evidence may have been presented

by the state to justify a finding of probable cause. Consequently, we are unable to hold that, assuming error of constitutional dimension, the magistrate erred in holding the defendant to answer in district court.[1] "We are restricted to the record before us and may not consider matters outside the record." *Parsons v. State*, 113 Idaho 421, 428, 745 P.2d 300, 307 (Ct.App.1987). *See also State v. Porath*, 113 Idaho 974, 751 P.2d 670 (Ct.App.1988); 4A C.J.S. Appeal and Error § 702, p. 530.

## II. JURY SEPARATION

Appellant next asserts that although no objection was made thereto, the trial court erred in allowing the jury to separate during the time of their deliberations.

As above noted, this case had been tried once before and resulted in a deadlocked jury. In the instant case the case was sent to the jury and they had retired to deliberate at 5:15 p.m. Thereafter the court discussed informally with counsel the possibility of deliberations continuing late into the night, and a separation of the jury at approximately 11:00 p.m. so that the members of the jury could return to their homes and return to deliberate the following morning. The jury was allowed to so separate and resumed deliberation at 9 a.m. the following day.

I.C. § 19–2126 provides in pertinent part:

The jury sworn to try an indictment for any offense except murder may at any time during the trial before the submission of the cause in the discretion of the court be permitted to separate or they may be kept together in charge of a proper officer....

Concededly that statute can be read to provide by negative inference that jurors in a criminal trial may not be separated after the case has been submitted to the jury. That statute, however, has been amended to allow separation of the jury during deliberations, and now provides that except in a charge of first degree murder the jury

---

**1.** In light of the disposition of this issue we express no view as to the constitutionality of the use of the closed circuit television.

"may at any time during the trial and after submission of the cause in the discretion of the court be permitted to separate or they may be kept together in the charge of a proper officer." I.C. § 19–2126 as amended by [ann. 1987, ch. 145, § 1, p. 289]. As noted, no objection was made to the separation procedure, and there is no showing in the record of any prejudice which resulted from the procedure. There is no assertion of any improper contacts with the jury during such time of separation, although some effort was apparently made by defense counsel to contact the jurors following the trial. As noted by the trial court, there was no news coverage of the trial, the separation of the jury was brief and allowed only sufficient time for jurors to go home, sleep, eat breakfast and return for further deliberations.

Appellant Flint argues that it is error per se to allow jury separation during deliberations, that an objection need not be raised to preserve the issue on appeal. We are cited to no authority by this Court which supports appellant's argument. The weight of authority in other jurisdictions is to the contrary. In *State v. Williams*, 39 Ohio St.2d 20, 313 N.E.2d 859 (1974), the jurors were allowed to separate after the case had been submitted to them, and the court held that the conviction would not be reversed, "where it is not shown that the defendant was thereby prevented from having a fair trial, and where the defendant did not object to the separation." Likewise, in *Jones v. People*, 711 P.2d 1270 (Colo.1986), the defendant entered no objection to the failure to sequester the jury in a first degree murder case, and the court stated:

> A defendant should not be permitted to remain silent at trial when the jury is allowed to separate and then object to separation for the first time in his motion for a new trial.... [I]n the absence of a timely objection and the failure to se-

quester the jury in a capital case it is not reversible error unless the defendant establishes prejudice arising out of the separation of the jury.

711 P.2d at 1280.

■ Assuming without deciding, that the trial court erred in allowing the jury to separate during the deliberations, we hold the error, if any, was not preserved for appeal, and has not been shown to have resulted in any prejudice or that the proceedings were in any way tainted. *See State v. Sharp*, 101 Idaho 498, 616 P.2d 1034 (1980); *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971); *State v. Watson*, 99 Idaho 694, 587 P.2d 835 (1978); *State v. Ellis*, 99 Idaho 606, 586 P.2d 1050 (1978).

## III. THE "DYNAMITE" INSTRUCTION

■ Defendant's next argument concerns the "dynamite instruction," set forth above, which was submitted to the deadlocked jury at the second trial. He contends that when the polling of the individual jurors disclosed a second hung jury, that jury should have been discharged, and the trial court acted improperly in proceeding to influence the jury to come to a verdict. We agree.

Just this last year in another case from the Fourth Judicial District, *State v. Clay*, 112 Idaho 261, 731 P.2d 804 (Ct.App.1987), the Court of Appeals stated that "the constitutional guaranty of due process demands that an accused person receive a fair and impartial trial. This guaranty is violated if jury deliberations are tainted by undue pressure." 112 Idaho at 263, 731 P.2d at 806.[2] The Court continued:

> The opportunity to exert such pressure is presented when a jury, after long deliberation, reports a deadlock. During the nineteenth century, a deadlocked jury was regarded by some courts as an evil to be combatted by psychological or even physical coercion. *Id. See also Note,*

---

**2.** That opinion was not released until March 30, 1987, making it obvious that the district court in this case did not have the benefit thereof in ruling on this defendant's motion for mistrial. The trial court undoubtedly could have been well aware of *district court* proceedings in *Clay*,

however. The order denying Clay's post-verdict motion for a mistrial was denied on June 17, 1985, almost three months before the jury in this case was given an exhortation to reach a verdict.

*Deadlocked Juries and Dynamite: A Critical Look at the "Allen" Charge*, 31 U.CHI.L.REV. 386 (1964). In this historical milieu, the United States Supreme Court approved the use of an instruction that directed a deadlocked jury to continue deliberating and exhorted jurors holding a minority view to reconsider their position. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). This instruction, and others like it, eventually earned the appellation "dynamite" because they proved to be effective in "blasting" verdicts out of potentially hung juries. *Id.*

The past two decades have brought greater sensitivity to the problem of jury deadlock. Declaring that individual jurors must not be pressured to abandon their honest beliefs, many federal and state courts have limited or abolished the *Allen* instruction. *Id. See, e.g. United States v. Thomas*, 449 F.2d 1177 (D.C. Cir.1971); *United States v. Brown*, 411 F.2d 930 (7th Cir.1969), *cert. denied*, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970); *Fields v. State*, 487 P.2d 831 (Alaska 1971); *People v. Gainer*, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977); *State v. Nicholson*, 315 So.2d 639 (La.1975); *State v. White*, 285 A.2d 832 (Me.1972); *State v. Martin*, 297 Minn. 359, 211 N.W.2d 765 (1973); *State v. Marsh*, 260 Or. 416, 490 P.2d 491

(1971), *cert. denied sub nom*, 406 U.S. 974, 92 S.Ct. 2420, 32 L.Ed.2d 674 (1972). 112 Idaho at 263, 731 P.2d at 806.

However, in *State v. Bailey*, 94 Idaho 285, 486 P.2d 998 (1971), this Court approved a dynamite instruction virtually identical to the one given to the deadlocked jury in the instant case.[3] 94 Idaho at 292, 486 P.2d at 1005. The Court warned, however, that in order to avoid undue emphasis, a dynamite instruction, if given at all, must be given together with *all* of the other instructions, and not as a separate point of law presented after considerable deliberation had already taken place. 94 Idaho at 292, 486 P.2d at 1005. Likewise, the Idaho Trial Judges Manual, § 7–63, provides that *dynamite instructions be given with all other instructions at the outset of deliberations.* Such was not done in the case at bar, which seems unusual and particularly unacceptable where a first trial had already taken place and that jury was deadlocked.

In other cases, the giving of the *Bailey* dynamite instruction has not been held grounds for reversal. *See, e.g., State v. Brown*, 94 Idaho 352, 487 P.2d 946 (1971); *State v. Byerly*, 109 Idaho 242, 706 P.2d 1353 (Ct.App.1985); *State v. Silcox*, 103 Idaho 483, 650 P.2d 625 (1982). Unlike *Silcox*, however, defense counsel here did object to the dynamite instruction. Moreover, unlike Idaho Jury Instruction 142,[4]

**3.** The *Bailey* instruction was worded thusly:

The court wishes to suggest a few thoughts which you may desire to consider in your deliberations along with all the instructions previously given.

In your further effort to reach a verdict in this case, I would suggest that in your deliberations you examine the issues submitted with a proper regard and consideration for the opinions of each other. Each of you should freely and fairly discuss with your fellow jurors the evidence and the deductions to be drawn therefrom, and you should listen to each other's arguments with an open mind. If, after doing so, any of you should be satisfied that a conclusion first reached by you was wrong, you unhesitatingly should abandon that original opinion and render your verdict according to your final decision. You should not hesitate to recede from a previously announced opinion or conclusion because of a sense of pride. Remember that you are not partisans or advocates, but rather judges.

However, you should not change the conclusion you have reached merely because one or more or all of your fellow jurors may have come to a different conclusion or merely to bring about a unanimous verdict.

*Have in mind in your further deliberations that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case. To this end you should make every reasonable effort to reach a verdict.*

You may now retire and continue your deliberations, in such manner as shall be determined by your good and conscientious judgment as reasonable men and women.

94 Idaho at 292, 486 P.2d at 1004 (emphasis added.)

**4.** REQUESTING THE JURY TO DELIBERATE FURTHER

Members of the Jury: In order to return a verdict, it is necessary that [all members] of

the instruction which was utilized here added a new concern that the jurors would *"make a definite contribution to efficient judicial administration"* if they were to agree to a verdict. The Court of Appeals noted in its *Clay* opinion as to similar language: "[a]lthough this reference may seem innocuous," the implicit reference to cost and inconveniences gives the jury the inescapable message that criminal justice would not be served if they failed to return a verdict. *Clay, supra,* 112 Idaho 261, 265 n. 2, 731 P.2d 804, 808 n. 2 (1987).

Our review of applicable case law, sound policy considerations, and personal experiences from the perspective of both bench and bar, convinces us that the future use of dynamite instructions is not consistent with the orderly administration of criminal justice. Accordingly, we overrule *State v. Bailey,* and its progeny. Today's holding is consistent with the views of the Arizona Supreme Court:

> When and wherever [a dynamite instruction's] use is called into question it must stand or fall upon the facts and circumstances of each particular case.... No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.... We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this Court.

*State v. Thomas,* 86 Ariz. 161, 166, 342 P.2d 197, 200 (1959). *See also United States v. Fioravanti,* 412 F.2d 407 (3d Cir. 1969). Similarly, the State of Washington, in order to eliminate the possibility of prejudice attendant upon the giving of dynamite instructions, adopted a rule which precludes the trial court from instructing a deadlocked jury in such a way to suggest to it the need for agreement, the consequences of not reaching an agreement, or the length of time a jury will be required to deliberate. *See* Washington Criminal Rule 6.15(f)(2) (cited in *State v. Watkins,* 660 P.2d 1117, 1121 (Wash.1983)).

Only a blanket prohibition against dynamite instructions will sufficiently protect the deadlocked jurors from coercion. A syllogism used by Justice Udall describes the pressure exerted on jurors when such instructions are given:

> The majority think he is guilty; the Court thinks I ought to agree with the majority so the Court must think he is guilty. While the Court did tell me not to surrender my conscientious convictions, he told me to doubt *seriously* the correctness of my own judgment. The Court was talking directly to me, since I am the one who is keeping everyone from going home. So I will just have to change my vote.

*State v. Voeckell,* 69 Ariz. 145, 210 P.2d 972, 980 (1949) (dissenting opinion) (emphasis in original).

Perhaps the greatest attribute of the American system of government, including the judicial department, is the freedom to hold different points of view. Attorney Carl Burke said the same recently in his remarks presented at the swearing-in of Justice Byron Johnson. Dynamite instructions belittle this attribute. As one commentator forcefully argues, the hung jury is not a jurisprudential failure, but rather is a commendation on the fair and even-handed administration of justice:

> [S]ome cases will inevitably present close factual questions on which twelve people cannot agree. Where such is the

---

the jury agree. You verdict must represent the considered judgment of each juror agreeing to it.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

IDJI 142.

case the unanimous verdict requirement and the ultimate acceptance of the jury's failure to reach accord protect the accused from conviction on the basis of evidence so close as to permit ... real and reasonable differences of opinion. In our system this is a desirable result. Despite the fact that each trial which ends in a hung jury may appear to be an exercise in futility and may create understandable judicial frustration, it should be remembered that a hung jury is only undesirable where the hanging jurors simply refuse to join in conscientious collective deliberations in an honest effort to reach a verdict.

Comment, *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge*, 53 VA.L.REV. 123, 145–46 (1967) (quoted in *Clay, supra,* 112 Idaho at 263, 731 P.2d at 807).

Proscribing the use of dynamite instructions does not restrict a trial court, as happened here, from polling the individual jurors, and depending on the responses and appearances, then when appropriate guiding them toward another appropriate period of deliberation. This assumes, of course, that the jurors do not declare themselves deadlocked.

We reverse the district court's order denying defendant's motion for a mistrial and remand for further proceedings consistent with this opinion.

HUNTLEY, J. concurs.

SHEPARD, Chief Justice, dissenting.

I respectfully dissent from the decision of the majority reversing the conviction in the instant case on the basis that the giving of a *Bailey* -type instruction [*State v. Bailey,* 94 Idaho 285, 486 P.2d 998 (1971) ], was erroneous, and requires reversal. There are no decisions of the United States Supreme Court which require such result under the strictures of the federal Constitution, and in fact the decisions of that court are to the contrary. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *United States v. Foster,* 711 F.2d 871 (9th Cir.1983).

The fact that the result obtained by the majority is not mandated by the decisions of the United States Supreme Court does not, of course, mean that the courts of this state cannot fashion their own remedies to deal with perceptions of deficiencies in our criminal justice system. *State v. Elisondo,* 114 Idaho 412, 757 P.2d 675 (1988). Nevertheless, it is my view that changes in the long established law and procedures in this state should only be undertaken in light of sound policy and practical considerations.

The instruction given in this case is virtually identical to the instruction given and approved by this Court in *State v. Bailey, supra.* In *Bailey* this Court reviewed the prior decisions of the Court beginning with *State v. Moon,* 20 Idaho 202, 117 P. 757 (1911). In *Bailey* the Court stated:

> Examination of previous cases decided by this court regarding the giving of instructions of similar import reflect that this court has been critical of the specific phraseology in some of the cases, but has in each instance upheld the conviction.... The giving of an instruction of the nature given by the court in this case requires the most careful consideration of the trial court. The instruction must be phrased so as not to encroach upon the fact finding function of the trial jury, nor should it in any way indicate the belief of the trial court as to the merits of the case. After a jury has deliberated for some extended period of time, in many instances the giving of such an instruction becomes desirable.

94 Idaho at 291–292, 486 P.2d at 999.

Thereafter, the *Bailey* -type instruction was approved in *State v. Brown,* 94 Idaho 352, 487 P.2d 946 (1971), and again approved in *State v. Silcox,* 103 Idaho 483, 650 P.2d 625 (1982). A *Bailey* -type instruction was approved by the Court of Appeals in 1985 in *State v. Byerly,* 109 Idaho 242, 706 P.2d 1353. The majority opinion places heavy reliance upon the Court of Appeals' decision in *State v. Clay,* 112 Idaho 261, 731 P.2d 804 (1987). The Court of Appeals did indeed overturn a conviction on the rationale that a *Bailey* -type instruction should not have been giv-

en under those particular circumstances. The court in *Clay*, in considering the *Bailey*-type instruction, stated: "Our review encompasses (1) the likely effect of the instruction itself; (2) the length of deliberations, with particular attention to deliberations following the instruction; and (3) other indicia of pressure upon the jury." The court noted other factors in addition to the instruction itself, *i.e.*, that the jury received the case at 3:00 p.m., and did not reach a verdict until more than fifteen hours later. As stated by the court in *Clay:*

> The time frames also depict another source of undue pressure on the jury— fatigue. When the jurors finally rendered a verdict, they had been in court more than twenty-one hours and they had gone without sleep for an even longer period. Such prolonged deprivation of a basic human need impugnes the judicial process and erodes confidence in the reliability of the jury's decision. Common sense indicates that as the night wore on, and as morning arrived, the jurors' capacity to make sound individual judgments and then to participate meaningfully in a collegial decision must have decreased. At the same time their motivation to "get it over with" must have increased.

The court in *Clay* further noted that after the jury had deliberated for eleven hours, at least five and perhaps seven jurors favored acquittal. In *Clay* another factor noted by the court was the trial court's mention in its instruction of the time and expense that would be saved by the jury arriving at a verdict.

In my view the circumstances of the instant case are substantially different than those considered by the Court of Appeals in *Clay*. I suggest that the broad speculative language of *Clay* is not in accord with the decisions of this Court in *Silcox* and *Bailey*. Here there were no long hours spent by the jury, but rather they were allowed to separate for the night. The language of the instruction perceived as error in *Clay*, is not included in the instant case. The instruction in the instant case reveals no suggestion by the court that any juror should render a verdict that conflicted with his or her individual conscience.

Hence, I view any reliance upon *Clay* to be misplaced. However, the majority in the instant case has squarely overruled *Bailey*, and presumably the cases subsequent thereto. Hence, I look to the majority opinion for a rationale as to why the law and procedure in such circumstances should be changed. I find nothing sufficient therein. It is evidently the belief of the majority that the giving of a *Bailey*-type instruction constitutes the exercise of coercion upon jurors. The majority observes that a "hung jury is not a *jurisprudential* failure." I agree. I would further note, however, that hung juries are not uncommon, and reflect the independence of mind of individual jurors in this state, and provide an indication that jurors are not coerced by the giving of a *Bailey*-type instruction. I would further note that implicit in the majority decision is the assumption that every time a *Bailey*-type instruction is given it will operate to the detriment of the defendant. I know of no basis for such an assumption, and the majority furnishes none. In my view, if there be any risk in the giving of a *Bailey*-type instruction, such may enure to the detriment of either the state or the defendant. We, of course, cannot be aware of the number of cases where as a result of a *Bailey*-type instruction the jury returned a not guilty verdict.

I would sustain and affirm the action of the trial court in its giving of the *Bailey*-type instruction in the instant case.

I do not disagree with the ultimate conclusion of the majority that there is no showing of error in the use of the closed-circuit television at defendant's preliminary hearing. I am, however, in a quandary regarding the majority's summary disposition of this aspect of the case when the cause is remanded for further proceedings, presumably a new trial. That issue could perhaps be disposed of by noting that the procedure of which the defendant complains was at the preliminary hearing and not at trial. The only function of a preliminary hearing in Idaho is to determine if a

public offense has been committed, and if there is probable cause to believe the crime was committed by the accused. *State v. Ruddell,* 97 Idaho 436, 546 P.2d 391 (1976); *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971). *See also* I.C.R. 5–5.1. A preliminary hearing is in no sense a trial, and therefore does not require the same formality and precision observed at a trial, *State v. Linn,* 93 Idaho 430, 462 P.2d 729 (1969), and in most criminal prosecutions the preliminary examination is conducted as a rather perfunctory uncontested proceeding with only one likely denouement, an order holding the defendant for trial. *See California v. Green,* 399 U.S. 149, 90 S.Ct. 1930. The decisions of this Court are clear, that even if evidence is admitted at a preliminary hearing which is ultimately determined to be inadmissible, that error is not a ground for vacating a conviction where the defendant has received a fair trial and is convicted, and there is sufficient evidence to sustain the conviction. *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). *See also State v. Maylett,* 108 Idaho 671, 701 P.2d 291 (Ct.App.1985).

The majority opinion is correct in noting that the error, if any, at the preliminary hearing was not preserved on appeal. If error there was at the preliminary hearing, such is subsumed in the proceedings at actual trial wherein the victim did testify in open court. Nevertheless, it is my view that the question should be addressed for the future guidance of our trial courts.

The problem of young victim testimony, particularly in criminal proceedings involving child abuse, presents major problems when viewed in the context of a defendant's right to be confronted with the witnesses against him. U.S. CONST. amend. VI. That same right in Idaho is provided by statute and case law. *State v. Drapeau,* 97 Idaho 685, 551 P.2d 972 (1976).

There can be no question but the rights guaranteed under the confrontation clause of the United States Constitution are important and substantial, *i.e.,* evidence will be given under oath, a jury which will decide the fate of the defendant will observe the demeanor and assess the credibility of witnesses, and a witness will be required to submit to cross-examination which has been denominated the greatest legal invention ever invented for the discovery of truth. *See Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); 5 J. Wigmore, *Evidence,* § 1395 (3d ed. 1970).

However, there is not an absolute requirement that there be face-to-face confrontation at trial. *Lee v. Illinois, supra; United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). This Court in *State v. Drapeau, supra,* held that the right of cross-examination of an adverse witness is an integral part of the guaranteed right to confrontation, however stated therein:

> The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness or being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers. (emphasis original).

97 Idaho at 689–90, 551 P.2d at 973.

There appears to be a growing recognition that crimes involving sexual abuse of children occur with alarming frequency, and have become a national concern. A majority of states have adopted statutes giving young crime victims special consideration. Several states permit the testimony of young victims to be videotaped outside the defendant's presence in lieu of in-court testimony. *See e.g.,* Alabama Stat. § 15–25–2 (Michie 1985); Alaska Stat. § 12.45.047 (Michie 1982); Ark.Stat.Ann. § 43–2036 (Michie 1985); Ariz.Rev.Stat. Ann. § 13–4253(B) (West 1986); Cal. Penal Code § 1346 (West 1986); Colo.Rev.Stat. § 18–3–413 (Bradford 1986); Conn.Gen. Stats. § 54–86g (1987); Fla.Stat. § 90.90 (1984 Supp.); Haw.Rev. Rule 616, St.

§ 626–1 (1985); Indiana §§ 31–6–16–1 to 31–6–16–7 (Michie 1987); Iowa § 910A.14 (1987); Kan.Stats. §§ 38–1557, 38–1558 (1986); Ky.Rev.Stat. § 421.350(4) (Bobbs–Merrill 1986); La.Rev.Stat.Ann. tit. 15, § 440.1 *et seq.* (West 1986); Me.Rev.Stat. Ann. tit. 15 § 1205 (West 1986); Mass.Gen. Laws Ann. ch. 278, § 16D (West 1986); Mont.Code Ann. § 46–15–401 *et seq.* (1985); N.H.Stat. § 632–A:8; N.M.Stat.Ann. § 30–9–17 (Equity 1984), N.Y.Ct.Rules, § 29.1; Okla.Stat.Ann. tit. 22 § 753(C) (West 1987); Penn.·42 Pa.C.S. § 5985(a) (West 1986); R.I.Stat. § 11–37–13.2 (Michie 1985); S.D.Codified Laws Ann. § 23A–12–9 (Smith 1986); Tex.Crim.Proc.Code Ann. art. 38.071 § 4 (Vernon 1986); Utah Stat. § 77–35–15.5 (Smith 1985); Wis.Stat.Ann. §§ 967.04(7)–(10) (West 1986).

Other statutes, solely or as an alternative, permit the taking of testimony over closed-circuit television for "live," simultaneous presentation to the jury. *See e.g.,* Ariz.Rev.Stat.Ann. § 13–4253(A) (West 1986); Cal. Penal Code § 1347 (West 1986); Ga.Code Ann. § 17–8–55 (Michie 1986); Ky. Rev.Stat. § 421.350(3) (1984); La.Rev.Stat. Ann. tit. 15, § 283 (1986); Mass.Gen.Laws Ann. ch. 278, § 16D (West 1986); N.Y. Crim.Proc.Law § 65.10, *et seq.* (McKinney 1987); Okla.Stat.Ann. tit. 22, § 753(B) (West 1987); Tex.Crim.Proc.Code Ann. art. 38.071 § 3 (Vernon 1986).

Appellate courts of other states generally have upheld these procedures. *See e.g., State v. Vigil,* 103 N.M. 583, 711 P.2d 28 (1985); *People v. Johnson,* 146 Ill.App.3d 640, 100 Ill.Dec. 330, 497 N.E.2d 308 (1986); *State v. Sheppard,* 197 N.J.Super. 411, 484 A.2d 1330 (1984); *State v. Melendex,* 135 Ariz. 390, 661 P.2d 654 (1982); *Commw. v. Willis,* 716 S.W.2d 224 (Ky.1986); *State v. Warford,* 389 N.W.2d 575 (Neb.1986); *McGuire v. State,* 288 Ark. 388, 706 S.W.2d 360 (1986); *Jolly v. Texas,* 681 S.W.2d 689 (Tex.Ct.App.1984), *writ dismissed. See also State v. Hewett,* 86 Wash.2d 487, 545 P.2d 1201 (1976); *Wildermuth v. Maryland,* 310 Md. 496, 530 A.2d 275 (1987).

Yet another recognized means of protecting young witnesses is the exclusion of spectators from the courtroom during the child's in-court testimony. *See e.g.,* Alaska Stat. § 12.45.048 (Michie 1982); 1973 Ariz. Rules of Criminal Procedure, Rule 9.3; Cal. Penal Code § 868.7 (West 1985); Ill.Ann. Stat. ch. 38, ¶ 115–11 (Smith–Hurd 1986); Mass.Gen.Laws Ann. ch. 278, §§ 16A and 16C (West 1986); Minn.Stat.Ann. § 631.045 (West 1987); N.C.Gen.Stat. § 15–166 (Michie 1983); S.D. Codified Laws Ann. § 23A–24–6 (Smith 1986).

Especially appropriate and applicable to the facts and circumstances of this case is *Sheppard, supra.* Therein, the Court rejected the contention that the confrontation clause requires in every case eye-to-eye contact between the defendant and a witness, concluding:

The Confrontation Clause is not implacable in its demands. Nearly every authority agrees that it is subject to exceptions. In reaching the conclusion, as this court has, that the use of videotaped testimony in this case of child abuse is permissible, it is accepted as a fact that only a modest erosion of the clause, if any, will take place. The child, through the use of video, will not be obliged to see the defendant or to be exposed to the usual courtroom atmosphere. Nevertheless, the defendant as well as the judge, the jury, and the spectators, will see and hear her clearly. Adequate opportunity for cross-examination will be provided. *This is enough to satisfy the demands of the confrontation clause.* If it is not, it represents a deserved exception. It is more than Wigmore would require. Everything but "eyeball-to-eyeball" confrontation will be provided. No case has held eye contact to be a requirement. It is not demanded when a witness "confronts" a defendant in the courtroom. No court rule requires eye contact and courtroom distances sometimes make such contact impossible. (emphasis applied).

484 A.2d at 1342–43.

Therefore, I would hold that the constitutional right of confrontation does not necessarily require face-to-face physical confrontation between the defendant and a witness when a balancing of competing interests

requires otherwise. I would so decide in the instant case since it involves a crime of child abuse where the victim was four years old at the time of the alleged crime, and five years old at the time of the preliminary hearing. At this point I would venture no view as to what age a child abuse victim witness will or will not fall within such an announced rule. I would leave such determination to be fleshed out by future decisions of our Court. In the instant case the competing interest presented was the conclusion by the magistrate that the testimony of the victim in the defendant's presence might result in further harm to the witness, and might prevent the court from obtaining reliable testimony. I would further note that the procedure used in the instant case afforded defense counsel a full opportunity to cross-examine the witness, and that the audio visual connection afforded the defendant the opportunity to confer with his lawyer during the testimony of that witness. Hence, I would hold that the use of closed-circuit television as a procedure to elicit testimony from a child victim outside the presence of the defendant is not per se violative of a defendant's right of confrontation.

BAKES, J., concurs.