**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37155/37156**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2011 Opinion No. 36** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: June 16, 2011** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| ADAM R. PULLIN, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgments of conviction for possession of methamphetamine and marijuana, affirmed.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Jeffrey Brownson argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GUTIERREZ, Judge

In this consolidated appeal, Adam R. Pullin appeals from his judgments of conviction. Case No. 37155 involves convictions for possession of methamphetamine and marijuana in which Pullin challenges the use of an instruction given to the jury. Case No. 37156 involves a conviction for possession of methamphetamine in which Pullin challenges the use of evidence admitted under Idaho Rule of Evidence 404(b). For the reasons set forth below, we affirm.

**I.**

**BACKGROUND**

In Case No. 37155, Pullin was charged with one count of felony possession of methamphetamine, Idaho Code § 37-2732(c)(1), and one count of misdemeanor possession of marijuana, I.C. § 37-2732(c)(3). In Case No. 37156, Pullin was charged with one count of felony possession of methamphetamine, I.C. § 37-2732(c)(1). The cases were tried on

1

consecutive days before the same judge with different juries, and shared a sentencing hearing. Pullin was found guilty by the juries and convicted as charged in both cases. Pullin appeals.

## II.

## DISCUSSION

With regard to Case No. 37155, Pullin argues that the district court improperly instructed the jury to continue deliberations after the jury stated that it could not reach a verdict, and misled the jury when it told the jury that its option was to continue deliberating either that day or another day, and did not inform the jury of the consequence of a hung jury. With regard to Case No. 37156, Pullin argues that evidence was improperly admitted under I.R.E. 404(b) when the state failed to give the required notice.

### A.  Dynamite Jury Instruction

Pullin asserts for the first time on appeal that the undue pressure on the jury to reach a verdict violated his constitutional rights. Pullin argues that the undue pressure occurred when the district court gave the jury a dynamite instruction.[1] Generally, Idaho's appellate courts will not consider error not preserved for appeal through an objection at trial. *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). However, even in cases where an error has not been properly preserved through objection at trial, an appellate court may remedy that error where the error is so fundamental that it results in the defendant being deprived of his Fourteenth Amendment due process right to a fair trial in a fair tribunal. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). Recently, in *State v. Perry*, 150 Idaho 209, 226-28, 245 P.3d 961, 978-80 (2010), the Idaho Supreme Court clarified the analysis applicable to unobjected to fundamental error, stating that:

> If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless.

*Id.* at 228, 245 P.3d at 980.

---

[1]  "A dynamite instruction is one that directs a deadlocked jury to continue deliberating and exhorts those jurors holding a minority view to reconsider their position." *State v. Gomez*, 137 Idaho 671, 676, 52 P.3d 315, 320 (2002).

Pullin argues that the district court's giving the jury an improper dynamite instruction violated his unwaived constitutional rights. Pullin further argues that the court's failure to inform the jury on the consequences of a deadlocked jury misled the jury, possibly leading it to believe that it must continue deliberations until a unanimous verdict was reached. The state counters that Pullin has failed to demonstrate that the district court's colloquy with the jury foreman violated Pullin's unwaived constitutional rights.

The United States Supreme Court has held that in order for a petitioner to be denied a constitutional right through the use of a dynamite instruction (or "supplemental charge"), the instruction must be coercive. *Lowenfield v. Phelps*, 484 U.S. 231, 239-41 (1988). In that case, the Supreme Court rejected a claim that giving a dynamite instruction was unconstitutional. In doing so, the Supreme Court rejected several arguments based on its own precedents, because those precedents had been based on the Court's supervisory powers over federal courts rather than on the Constitution. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965) (holding that an instruction given after the jury informed the judge that it was unable to reach a verdict, and the judge told the jury it had to reach a decision, was improper after relying on other cases involving the exercise of supervisory powers, and not relying on constitutional grounds); *Brasfield v. United States*, 272 U.S. 448, 449-50 (1926) (holding that the judge's inquiry into the jury's numerical division was improper due to the potential dangers of jury polling by relying on the Court's supervisory powers). While stating that it was mindful that the jury returned with its verdict soon after receiving the supplemental instruction, suggesting the possibility of coercion, the Supreme Court concluded that because defense counsel did not object to the supplemental instruction, it indicated that the potential for coercion that the defendant argued on appeal was not apparent when the instruction was given. Therefore, the supplemental instruction was not coercive in such a way that the defendant was denied a constitutional right. *Lowenfield*, 484 U.S. at 239-41.

Idaho law is consistent with federal law, although it provides greater protection to the defendant. To avoid the possibility of jury coercion, the Idaho Supreme Court has adopted a "blanket prohibition" against the use of such instructions. *State v. Gomez*, 137 Idaho 671, 676, 52 P.3d 315, 320 (2002); *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988). However, in prohibiting the use of dynamite instructions altogether, the Supreme Court specifically disclaimed any intent to prohibit instructions directing further deliberations where the jury is not definitely deadlocked:

3

Proscribing the use of dynamite instructions does not restrict a trial court . . . from polling the individual jurors, and depending on the responses and appearances, then when appropriate guiding them toward another appropriate period of deliberation. This assumes, of course, that the jurors do not declare themselves deadlocked.

*Flint*, 114 Idaho at 813, 761 P.2d at 1165.

In this case, after over an hour and a half of deliberations, the jury sent the court a note stating, "Judge, we cannot come to an [sic] unanimous decision." The court asked both counsel whether either objected to the court asking the jury whether the note applied to both of the counts and whether it believed additional discussion would be helpful. After neither party objected, the following discussion occurred:

[COURT]: Please be seated. Let the record show it's 4:39. The jury has returned and is properly seated.

Mr. [Juror], the court received your note that says that the jury cannot come to a unanimous decision. Let me break that down to two questions for you. There's obviously two questions on the verdict form. Does that apply to both of the questions that have come to you?

[PRESIDING JUROR]: Yes.

[COURT]: So you've not reached a verdict on either count?

[PRESIDING JUROR]: (Nodded negatively.)

[COURT]: Again, I don't want to know how the jury stands on these issues. What I do need to know, in your opinion as the presiding juror, will further deliberations be beneficial to you?

[PRESIDING JUROR]: I really don't believe so.

[COURT]: It is a quarter to five on a Friday. It's been a long week for everybody. There are options. There are options to continue tonight for a period of time. There are options to--nobody wants to do this, but there are options I'll tell you. We can come back tomorrow, on a Saturday, with the consent of the jury, and allow you to take a fresh look at this case. We can continue this case over till Monday, you know, on a regular court day and this sometimes happens.

Do you think that further delay, given the hour of the day, would be of benefit here, or do you think the jury is at an impasse that further discussion is just not going to resolve this case?

[PRESIDING JUROR]: The way we were discussing it, I don't think more discussion on it will change the opinions of the jurors. I could ask them again after hearing what you discussed, but my opinion, I don't think it's going to change.

4

[COURT]: Well, I'm going to ask you to do that.

[PRESIDING JUROR]: Okay.

[COURT]: Obviously the parties have invested time today.

[PRESIDING JUROR]: Sure.

[COURT]: We've invested time with you.

[PRESIDING JUROR]: And we discussed that.

[COURT]: Why don't you go back in there and visit a minute, consider those options. When you're ready, you come back and report as to what you think this jury is prepared to do and not to do. Okay.

[PRESIDING JUROR]: Okay.

Approximately thirty minutes after this discussion the jury returned guilty verdicts on both counts.

Pullin has failed to show actual coercion such that the instruction given by the court was unconstitutional. The district court did not instruct the presiding juror that the jury had to deliberate further, the court merely asked the juror to "go back in there and visit a minute, consider those options." Moreover, the circumstances here where the presiding juror gave equivocal responses such as "I really don't *believe* so," and "I don't *think* more discussion on it will change the opinions of the jurors," combined with Pullin's counsel's failure to object to the statements the court made to the jury with regard to continued deliberations or the time invested in this case, indicate that the potential for coercion was not apparent on the spot. Although the fact that the jury came back with a guilty verdict fairly soon after the judge spoke with the presiding juror may suggest the possibility of coercion in some instances, we do not believe it does so here because the original deliberations before the jury spoke to the court were not particularly lengthy in comparison at only an hour and a half. Because Pullin has not established that he was denied an unwaived constitutional right, he has failed the first prong of the fundamental error test set forth in *Perry*. Therefore, since this claim was not preserved through an objection below and is not reviewable for constitutional error, we affirm Pullin's convictions in Case No. 37155.

5

**B.      Rule 404(b) Evidence**

Pullin asserts that the district court improperly admitted evidence under I.R.E. 404(b) when the state failed to give the required notice.  In the underlying criminal case, Pullin was arrested on an unrelated matter while he was standing at the driver's door of a vehicle in a parking lot.  During the search incident to the arrest, a pipe containing methamphetamine residue was found in his pants pocket.  In addition, evidence of two other pipes, a baggie of methamphetamine, lighters (including one with Pullin's initials on it), and a Q-tip were also found in the vehicle that Pullin had previously been seen driving.  Pullin moved to exclude the evidence found in the vehicle just prior to trial, but the state responded that the evidence was admissible under Rule 404(b).  Pullin argued, among other things, that the state failed to give the required notice to admit the evidence.  The state conceded that it never provided notice, but maintained that it had good cause for not giving notice because all of the evidence had been otherwise disclosed in discovery.  The district court made no express determination that the state had good cause for its failure to comply with Rule 404(b), but instead determined that defense counsel must have been aware of the evidence or the motion to exclude the evidence would not have ever been made.  Therefore, the district court determined that there was no prejudice and that the evidence would be admitted.

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity.  I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987).  However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b).  *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002).  The evidence may be allowed if "the prosecution in a criminal case . . . file[s] and serve[s] notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown."  I.R.E. 404(b).  In this case, the prosecution failed to serve notice, and the court did not excuse pretrial notice on good cause shown.

The state argues that the evidence in the vehicle was not evidence of a prior bad act and was therefore not subject to Rule 404(b).  We agree.  Rule 404(b) "does not extend to evidence of acts which are intrinsic to the charged offense."  *State v. Sheldon*, 145 Idaho 225, 228, 178 P.3d 28, 31 (2008).  In that case, after Sheldon was stopped in his vehicle, he consented to a search of his vehicle for weapons.  Officers discovered a set of brass knuckles and a knife.  After Sheldon was placed under arrest for the concealed weapons, the officers performed a search of

6

the vehicle incident to arrest. The search uncovered almost $7,000 in cash found in Sheldon's wallet and day planner, and more than a pound of methamphetamine beneath the springs of the driver's seat. The cash discovered during the search was introduced at trial as evidence that Sheldon was guilty of trafficking in methamphetamine. The jury found Sheldon guilty. On appeal, Sheldon argued that the cash was "other acts" evidence and that it should have been excluded by the district court under Rule 404(b). The Court of Appeals determined that the cash was not Rule 404(b) evidence, and that it was properly admitted. On review, the Idaho Supreme Court stated that "[e]vidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged," and concluded that the cash was not Rule 404(b) evidence, but physical, circumstantial evidence that was inextricably intertwined with evidence of the crime of trafficking in methamphetamine. *Sheldon*, 145 Idaho at 226-29, 178 P.3d at 29-32.

Similarly here, the evidence found inside of the car was not evidence of a prior crime, wrong, or other act, but was merely part of the same criminal episode. The search of the vehicle occurred directly after the search of Pullin's person, and was part of the search incident to his arrest. The evidence found in the vehicle was physical, circumstantial evidence that was inextricably intertwined with evidence of the crime of possession of methamphetamine. Whether the evidence found in the vehicle was attributable to Pullin was a conclusion that was left to the jury. Therefore, the evidence from the vehicle did not fall within the scope of Rule 404(b) or its notice requirement.

Although we have concluded that the evidence from the vehicle is not subject to Rule 404(b), we must still determine whether this evidence was properly admitted. The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion. *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." I.R.E. 401.

In order to prove Pullin's guilt of possession of a controlled substance, the state was required to prove that he had both knowledge and control of the methamphetamine found in his pants pocket. *State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999); *State v. Ortiz*, 148 Idaho 38, 41, 218 P.3d 17, 20 (Ct. App. 2009); *State v. Silva*, 134 Idaho 848, 855, 11 P.3d 44, 51 (Ct. App. 2000). We have previously noted that in a possession of a controlled substance case,

"[t]he greater the amount of a controlled substance found in a defendant's possession, the greater the inference of knowledge . . . ." *State v. Groce*, 133 Idaho 144, 152, 983 P.2d 217, 225 (Ct. App. 1999). Here, the evidence of the two pipes and the methamphetamine residue found in the vehicle were relevant as to Pullin's knowledge of his possession of a controlled substance as the existence of the evidence found in the vehicle bolsters the inference that he had knowledge of the methamphetamine on his person. We conclude that the evidence was relevant and that the district court acted within the boundaries of its discretion in admitting it. We therefore affirm the ruling of the district court on this basis. *See State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984) (holding where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory).

### III.

### CONCLUSION

With regard to Case No. 37155, Pullin has failed to establish that he was denied an unwaived constitutional right through the use of a coercive dynamite instruction. Accordingly, we affirm the convictions in Case No. 37155. With regard to Case No. 37156, Pullin has failed to establish that the district court erred in admitting the evidence found in the vehicle. Accordingly, we affirm the conviction in Case No. 37156.

Chief Judge GRATTON **CONCURS.**

Judge MELANSON, **CONCURRING IN THE RESULT**

I concur in Part A of the lead opinion to the extent that it holds that there was no constitutional violation because the instruction was not coercive. In my view, however, the instruction did violate our Supreme Court's prohibition against such instructions announced in *State v. Flint*, 114 Idaho 806, 761 P.2d 1158 (1988). It seems to me that the purpose of the *Flint* ruling was to avoid even the risk that these instructions might have a coercive effect upon minority jurors and also avoid the need for appellate review of instructions of this kind in order to attempt to determine whether there was such an effect. Here, fundamental error review was not appropriate because there was no constitutional violation but "only" a violation of a rule of court, a violation which does not invoke fundamental error. *See State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). In my view, trial courts should continue to refrain from giving these types of instructions except to the narrow extent permitted by *Flint* and never after jurors have declared themselves deadlocked. Therefore, I concur in the result. I concur fully with Part B.