# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46724

|  |  |  |
|---|---|---|
| **STATE OF IDAHO,** | ) | **Boise, May 2020 Term** |
|  | ) |  |
| **Plaintiff-Respondent,** | ) | **Opinion Filed: September 2, 2020** |
|  | ) |  |
| **v.** | ) | **Melanie Gagnepain, Clerk** |
|  | ) |  |
| **KLAUS NICO GOMEZ-ALAS** | ) |  |
|  | ) |  |
| **Defendant-Appellant.** | ) |  |
|  | ) |  |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Ned C. Williamson, District Judge.

The decision of the district court is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Andrea Reynolds argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth Jorgensen argued.

---

BEVAN, Justice

## I. NATURE OF THE CASE

In December 2017, Klaus Nico Gomez-Alas was charged with two felony counts: rape and infamous crime against nature. At trial, he was acquitted on the first count of rape, but convicted of simple battery as an included offense. On the second count, the jury found Gomez-Alas guilty of an infamous crime against nature. After the verdict, Gomez-Alas moved the district court for a new trial pursuant to Idaho Criminal Rule (I.C.R.) 34, arguing the district court misled the jury by giving an improper "dynamite" instruction. Gomez-Alas also moved the district court for judgment of acquittal on the second count pursuant to I.C.R. 29, arguing there was insufficient evidence to support a conviction for the infamous crime against nature charge. The district court denied both post-trial motions. Gomez-Alas appeals, arguing: (1) the act of cunnilingus does not constitute an infamous crime against nature under Idaho Code sections 18-6605 and 18-6606; (2) there was

1

insufficient evidence to support a conviction for the infamous crime against nature charge; and (3) the district court misled the jury by providing an improper dynamite instruction. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 25, 2017, after receiving a report of rape, an officer with the Sun Valley Police Department responded to the Sun Valley Company Moritz Dormitory and met with the alleged victim. The victim explained to the officer that she had awoken to an unidentified man, later identified as Gomez-Alas, having sexual intercourse with her in the top bunkbed of her dormitory room. The victim also stated Gomez-Alas "did oral sex to [her]" and "got [her] up and made [her] do oral sex to him for like a minute." Based on these allegations, Gomez-Alas was charged with two felonies: rape, and an infamous crime against nature. After a seven-day trial, the jury found Gomez-Alas guilty of battery, a lesser included misdemeanor offense of rape, and the infamous crime against nature, based on penetration, however slight, of Gomez-Alas' tongue into the vaginal opening of the victim against her will.

After the verdict, Gomez-Alas moved the district court for a new trial pursuant to I.C.R. 34, alleging the district court mislead the jury by giving an improper dynamite instruction. The district court was unpersuaded and denied Gomez-Alas' motion, finding the jury had not declared itself deadlocked. Gomez-Alas also moved the district court for judgment of acquittal pursuant to I.C.R. 29, arguing there was insufficient evidence of: (1) penetration and (2) the act of cunnilingus being committed against the victim's will. The district court also denied Gomez-Alas' motion for judgment of acquittal, finding sufficient evidence of penetration from testimony that Gomez-Alas had licked the victim's clitoris and/or vagina. The district court also found sufficient evidence showed that the act was committed against the victim's will, based on testimony about the victim's level of intoxication. Gomez-Alas timely appealed.

## III. ISSUES ON APPEAL

1.      Whether the act of cunnilingus constitutes an infamous crime against nature under Idaho Code sections 18-6605 and 18-6606?

2.      Whether the district court erred in finding there was sufficient evidence of penetration and that the act of cunnilingus was committed against the victim's will to support Gomez-Alas' conviction for the infamous crime against nature charge?

3.      Whether the district court abused its discretion in denying Gomez-Alas' motion for a new trial after finding it did not mislead the jury by giving an improper dynamite instruction?

## IV. STANDARD OF REVIEW

"[T]he interpretation of a statute is a question of law over which this Court exercises free review." *State v. Osborn*, 165 Idaho 627, 629, 449 P.3d 419, 421 (2019) (quoting *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 581, 416 P.3d 951, 953 (2018)).

"Appellate review of the sufficiency of the evidence is limited in scope." *State v. Betancourt*, 151 Idaho 635, 638, 262 P.3d 278, 281 (Ct. App. 2011). "This Court will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *State v. Tryon*, 164 Idaho 254, 257, 429 P.3d 142, 145 (2018) (quoting *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017)). "In conducting its analysis, the [C]ourt is required to consider the evidence in the light most favorable to the State, [and] will not substitute its judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence." *State v. Taylor*, 157 Idaho 186, 190, 335 P.3d 31, 35 (2014) (internal quotations omitted).

"The denial of a motion for new trial is reviewed for an abuse of discretion." *State v. Ellington*, 157 Idaho 480, 485, 337 P.3d 639, 644 (2014). This Court reviews an alleged abuse of discretion by considering whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## V. ANALYSIS

Gomez-Alas alleges three errors on appeal. First, Gomez-Alas argues the district erred in interpreting Idaho Code sections 18-6605 and 18-6606 to prohibit the act of cunnilingus. Second, Gomez-Alas argues the district court erred in finding there was sufficient evidence of penetration and that the act of cunnilingus was committed against the victim's will. Third, Gomez-Alas argues the district court abused its discretion in denying Gomez-Alas' motion for a new trial relative to the alleged dynamite instruction. For the reasons discussed below, we affirm.

### A. The act of cunnilingus constitutes an infamous crime against nature under Idaho Code sections 18-6605 and 18-6606.

The district court found Idaho Code sections 18-6605 and 18-6606 prohibited the act of nonconsensual cunnilingus. Gomez-Alas argues the district court erred as a matter of law in

interpreting Idaho Code sections 18-6605 and 18-6606. According to Gomez-Alas, the statutes are ambiguous because they do not provide an enumerated list of prohibited acts. Alleging ambiguity, Gomez-Alas maintains the Legislature did not intend these statutes to prohibit conduct such as cunnilingus because the statutes only apply to acts involving male sexual organs. Gomez-Alas also argues corpus linguistics supports his interpretation, as the phrase "crime against nature" has never included the act of cunnilingus in Idaho.

"Our objective when interpreting a statute is to derive the intent of the legislative body that adopted the act." *Osborn*, 165 Idaho at 629, 449 P.3d at 421 (internal quotations omitted). Interpretation begins with the statute's plain language. *Id*.

> This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings. When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction.

*Id*. (quoting *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015) (internal citations omitted)). When a statute is ambiguous, "the [C]ourt looks to rules of construction for guidance . . . and may consider the reasonableness of proposed interpretations." *Ada Cnty. v. Gibson*, 126 Idaho 854, 856, 893 P.2d 801, 803 (Ct. App. 1995). A statute is ambiguous "where reasonable minds might differ or be uncertain as to its meaning." *State v. Doe*, 140 Idaho 271, 274, 92 P.3d 521, 524 (2004). When ambiguity exists, "the intent of the drafters may be ascertained by considering, first, the express language and, in addition, the context in which the language is used, the evils to be remedied and the objects in view." *Gibson*, 126 Idaho at 857, 893 P.2d at 804.

Idaho Code sections 18-6605 and 18-6606 are unambiguous; thus, rules of construction, including the use of corpus linguistics, are not required in resolving the first issue presented. Idaho Code section 18-6605 provides: "[e]very person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment. . . ." Although the issue presented here is a matter of first impression, this Court has subjected section 18-6605 to "authoritative judicial construction" on numerous occasions. *See State v. Carringer*, 95 Idaho 929, 930, 523 P.2d 532, 533 (1974). Over 100 years ago this Court explained, "it was not the intention of the Legislature to limit prosecutions to the crime of sodomy and to omit the inhibition and punishment of other infamous crimes against nature." *State v. Altwatter*, 29 Idaho 107, 108, 157

P. 256, 257 (1916). Construing the infamous crime against nature statute[1] liberally, this Court held the language "is sufficiently broad to include not only the crime of sodomy, but also *all unnatural carnal copulations*." *Id*. (emphasis added). All unnatural carnal copulations includes acts "committed *per os*[2] or *per anum*." *State v. Johnson*, 120 Idaho 408, 412, 816 P.2d 364, 368 (Ct. App. 1991) (citing *Altwatter*, 29 Idaho at 107, 157 P. at 256).

This Court has explicitly held an act of fellatio can constitute a crime against nature. *See State v. Izatt*, 96 Idaho 667, 669–70, 534 P.2d 1107, 1109–10 (1975) ("[T]he act of fellatio is included within the statutory definition of crimes against nature contained in [sections] 18-6605, 18-6606."); *see also Carringer*, 95 Idaho at 930, 523 P.2d at 533 ("It is beyond doubt that the defendant's acts [of fellatio] fall squarely within the very core of I.C. [§] 18-6605."). Fellatio is defined as: "[t]he sexual act involving oral stimulation of a person's penis." *See Fellatio*, BLACK'S LAW DICTIONARY (11th ed. 2019). Contrary to Gomez-Alas' corpus linguistics' argument, this Court has not limited crimes against nature to include only acts involving male sexual organs; rather, we have not been called upon to determine whether acts committed *per os* involving female sexual organs is covered by Idaho Code sections 18-6605 and 18-6606. Our appellate courts have been clear in defining crimes against nature to include all unnatural carnal copulations committed *per os* or *per anum*. *See Carringer*, 95 Idaho at 930, 523 P.2d at 533; *Johnson*, 120 Idaho at 412, 816 P.2d at 368. The phrase *per os* is not limited to acts involving only male sexual organs; the phrase means by way of mouth and provides no reference to male or female sexual organs. Cunnilingus is defined as: "[t]he sexual act involving oral stimulation of a person's vulva or clitoris." *See Cunnilingus*, BLACK'S LAW DICTIONARY (11th ed. 2019). Considering that both fellatio and cunnilingus involve oral stimulation of sexual organs, "[i]t would be a paradox of legal construction to say that fellatio . . . is proscribed as a crime against nature, but cunnilingus is not." *Locke v. State*, 501 S.W.2d 826, 828 (Tenn. Crim. App. 1973).

In summary, Idaho has broadly construed Idaho Code sections 18-6605 and 18-6606 so that an infamous crime against nature includes all unnatural carnal copulations committed *per os*

---

[1] The statute was enumerated in 1916 as Idaho Code section 6810, but the language is identical to Idaho Code section 18-6605: "[e]very person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment. . . ." *Altwatter*, 29 Idaho at 108, 157 P. at 257.

[2] *Per os* is defined as: "by way of the mouth." *Per Os*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/medical/per%20os (last visited June 9, 2020).

or *per anum*. *See Altwatter*, 29 Idaho at 108, 157 P. at 257. This Court has explicitly held "all unnatural carnal copulations" includes the act of fellatio. *Carringer*, 95 Idaho at 930, 523 P.2d at 533. We thus hold all unnatural carnal copulations include the act of cunnilingus as well.

**B.     There was sufficient evidence of penetration; also, the act of cunnilingus was committed against the victim's will so Gomez-Alas' conviction on the infamous crime against nature charge is sustained.**

Gomez-Alas argues the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his conviction of an infamous crime against nature based on Gomez-Alas' tongue penetrating "into the vaginal opening" of the victim "against her will." First, Gomez-Alas argues there is no evidence of penetration because "licking" does not constitute penetration, even slight. Second, Gomez-Alas argues there is no evidence that the act of cunnilingus was committed against the victim's will.

1. <u>The evidence supports Gomez-Alas' conviction for penetration, however slight, of the victim's vagina.</u>

The material elements for an infamous crime against nature are described in Idaho Code sections 18-6605 and 18-6606. Again, Idaho Code section 18-6605 provides: "[e]very person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment. . . ." Section 18-6606 provides that "[a]ny sexual penetration, however slight, is sufficient to complete the crime against nature."

Here, the victim testified that Gomez-Alas licked her vagina:

Q.     What happened next?
A.     He made me oral sex.
Q.     How did he make you oral sex?
A.     He went down.
Q.     He went down with his head?
A.     Yes.
Q.     And where did he put his head?
A.     In my vagina.
Q.     Were you able to feel what was going on?
A.     Yes.
Q.     Did you feel anything penetrate your vagina at that point?
A.     I felt that it was being licked.

Additionally, in interviews with Gomez-Alas which were admitted at trial, Gomez-Alas admitted to performing oral sex on the victim. When asked by an officer where Gomez-Alas specifically licked the victim, Gomez-Alas responded "[a]t the clitoris." The State called a medical doctor to educate the jury on female anatomy. That witness, Dr. Ashley King, testified:

6

When we think about kind of the larger area that we're discussing, we often times describe the genital opening, which is difficult to imagine what the boundaries are when you're describing a genital opening, and it has classically been defined—so this is considered anterior, anteriorly as the mons pubis with the clitoris being here (indicating), and then on each side the labia majora coming around on each side and then the perineal body posteriorly as kind of the bounds of the genital opening itself.

Dr. King was explaining a diagram of the anatomical features of a woman's genitalia that illustrated that the clitoris is within the vaginal opening. The diagram was also admitted at trial, which educated the jury as to the area in which Gomez-Alas "went down," and put his head in the victim's "vagina" where he "licked" her.

In denying Gomez-Alas' motion for judgment of acquittal on this ground, the district court analyzed the evidence supporting the verdict, in a light favoring the prosecution, as follows:

It is not fatal to the State's case that Jury Instruction No. 20.4 [the elements instruction], as requested by the State, required penetration of the "vaginal opening" but that the State only adduced testimony placing the clitoris in the "genital opening" as defined by Dr. King. Based on the dictionary definitions of vaginal and genital, the term "vaginal opening" appears to be more limited in size then "genital opening." By the application of common sense, the [c]ourt easily finds there is competent evidence to sustain the guilty verdict as to the element of penetration of either the genital opening or vaginal opening.

The [c]ourt makes this finding based on i) the proximity of the clitoris to the inner portion of the *labium minus*, ii) Defendant's admission to licking the victim's clitoris, iii) the presence of male DNA found in the perineal area and iv) Idaho Code § 18-6606 which only requires "slight penetration." Dr. Gabaeff testified the presence of "male DNA in the perineal area was insufficient in volume to be used for an ID, and is consistent with epithelial cells from the mouth that would be suspended in saliva, which will be present with oral sex activities." The evidence shows that Defendant licked the clitoris and left saliva in the perineal area but there is no direct evidence that Defendant licked the area between the victim's clitoris and the perineal area. Therefore, under Defendant's strict clinical argument, the State failed to prove penetration of the vaginal area. But, a reasonable person could make the inference that a young man while on an upper single bed bunk and in the dark continued oral sex between the areas anterior and posterior to the vaginal or genital opening of the victim, thereby penetrating either the vaginal or genital opening. In making this inference, a reasonable jury could easily find penetration beyond a reasonable doubt because the law only requires "slight penetration" to complete the crime against nature. . . .

Furthermore, to the extent there is conflicting evidence that there was or was not penetration of the vaginal area, the [c]ourt finds there is substantial evidence to sustain a conviction as to the element of penetration. "Where there is

7

competent although conflicting evidence to sustain the verdict [a court] cannot reweigh that evidence or disturb the verdict."

(Citations omitted).

"On review of the denial of a motion for a judgment of acquittal, [this Court] exercises free review of the record, taking all inferences in favor of the [S]tate, to determine whether there is substantial evidence to support the challenged conviction." *State v. Merwin*, 131 Idaho 642, 644, 962 P.2d 1026, 1028 (1998). "Where there is competent although conflicting evidence to sustain the verdict, this [C]ourt cannot reweigh that evidence or disturb the verdict." *Id.* at 644–45, 962 P.2d at 1028–29.

Based on this record, a reasonable jury could find that the necessary penetration, "however slight," of the victim's vagina occurred. We affirm Gomez-Alas' conviction on this ground.

2. Idaho Code sections 18-6605 and 18-6606 do not require force, violence, duress or threat for an act to be committed against a victim's will.

The district court correctly noted that neither section 18-6605 nor 18-6606 contains an express requirement that the sexual penetration be against the victim's will. Even so, the district court also recognized there is a constitutional prohibition against criminalizing the private sexual conduct of two consenting adults. *See Lawrence v. Texas*, 539 U.S. 558, 578 (2003). The Due Process Clause of the United States Constitution provides a protected liberty interest for "two adults who, *with full and mutual consent from each other*, engaged in sexual practices common to a homosexual lifestyle." *Id.* at 578 (emphasis added). Thus, "Idaho's statute prohibiting the infamous crime against nature may not be constitutionally enforced to prohibit private *consensual* [sexual] conduct." *State v. Holden*, 126 Idaho 755, 761, 890 P.2d 341, 347 (Ct. App. 1995) (emphasis added).

With that in mind, we recognize that "*Lawrence* makes clear that this constitutional protection does not apply to nonconsensual sexual acts, including sex with those incapable of consenting." *State v. Hamlin*, 156 Idaho 307, 314, 324 P.3d 1006, 1013 (Ct. App. 2014) (citing *Lawrence,* 539 U.S. at 578). The *Lawrence* Court thus specifically delimited the due process right to those cases involving adults who are fully consenting. Consequently, as our Court of Appeals has recognized, *Lawrence's* holding "does not affect [our] state's legitimate interest and indeed, duty, to interpose when *consent is in doubt*." *State v. Cook*, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct. App. 2008) (emphasis added) (quoting *Anderson v. Morrow*, 371 F.3d 1027, 1032–33 (9th Cir. 2004)). This is precisely such a case.

8

To resolve this issue for Gomez-Alas' trial, the district court, with the State and Gomez-Alas' agreement, crafted a jury instruction that required the State to prove that Gomez-Alas "engaged in conduct consisting of the penetration, however slight, of the defendant's tongue into the vaginal opening of the victim *against her will*." (Emphasis added). Gomez-Alas argued in his post-trial motion, and he continues to assert here, that for an infamous crime against nature to be "against the will" of a victim, it must be perpetrated through force, violence, threat or coercion. He bases his argument on what he characterizes as the definition of "against the will" found in Idaho Code section 18-6608(1).[3] He contends "there is a meaningful difference between an act that is performed without consent, or without affirmative consent, and an act that is performed against a person's will."

We disagree with Gomez-Alas' assertion on two fronts. First, he would have us focus on what he claims is the definition of "against the will" set forth for a crime that requires force for its very execution. The elements required to prove a crime by force against one's will are not equivalent to what is required to prove that a crime was committed without the "full and mutual consent from [the victim]." Thus, for purposes of the infamous crime against nature statute, we conclude there is no meaningful difference between an act that is performed without consent, or without affirmative consent, and an act that is performed against a person's will.

Second, Gomez-Alas' view would require that we read into the statute not only that the conduct be nonconsensual, but that it also result from force, violence, duress or threat. Taken to its logical end, Gomez-Alas' view goes well beyond "nonconsensual" criminal conduct to a place requiring proof that is not required under the Constitution. The legal proscription imposed upon section 18-6605 by *Lawrence*, *Cook* and *Holden* cannot be stretched so far. This case presents an

---

[3] Idaho Code section 18-6608, the statute governing *forcible* penetration by use of foreign object, provides in relevant part:

> Every person who willfully causes the penetration, however slight, of the genital or anal opening of another person, by any object, instrument or device [shall be guilty of a felony, if that act is (1) against the victim's will by]:
>
> (a) Use of force or violence; or
>
> (b) Duress; or
>
> (c) Threats of immediate and great bodily harm, accompanied by apparent power of execution . . . .

9

instance in which consent was directly at issue. Thus, while the jury instruction here used language requiring the State to prove that the crime was committed against the victim's will, the facts presented were sufficient to support that element given the instructions as a whole and the way that "a reasonable juror would have interpreted the instruction." *State v. Medina*, 165 Idaho 501, 507, 447 P.3d 949, 955 (2019). In the future, to be more consistent with *Lawrence* and our holding today, the instruction would more properly require that "the penetration, however slight, of the defendant's tongue into the vaginal opening of the victim be *without her consent*." Even so, the instruction given by the district court, as we hold today, suitably set forth what the State had to prove in circumstances like the case at bar.

The dissent argues this holding oversteps our authority and that we are creating substantive legislation from the bench. However, "[i]t is a general rule of statutory construction that the courts should not nullify a statute or deprive a law of its potency unless such course is absolutely necessary." *Cowles Publ'g Co., v. Magis. Ct. of the First Jud. Dist. of the State of Idaho, Cnty. of Kootenai*, 118 Idaho 753, 759–60, 800 P.2d 640, 646–47 (1990). We do not find that course necessary. The question before us was generally answered by the Idaho Supreme Court in 1916 when it held that "it was not the intention of the Legislature to limit prosecutions to the crime of sodomy and to omit the inhibition and punishment of other infamous crimes against nature." *Altwatter*, 29 Idaho at 108, 157 P. at 257. On the specific matter of first impression regarding consent, we simply note there is nothing in the statute requiring that non-consent equate to "against the will" accompanied by force or duress as Gomez-Alas and the dissent advocate, simply because that definition lies in close proximity to the infamous crime against nature statute in this chapter of the Idaho Code. It is also noteworthy that Gomez-Alas has not alleged that the statute, based upon the jury instruction that he agreed upon, is unconstitutional.

"[W]henever possible, a statute should be construed so as to avoid a conflict with the state or federal constitution. *Holden*, 126 Idaho at 761 n.4, 890 P.2d at 347 n.4. In light of *Lawrence*, 539 U.S. at 578, we simply hold that "against one's will" is synonymous with "without consent." Thus, we are not changing the plain meaning of the legislation, nor are we inserting qualifying terms or provisions into the statutes that are not there. *See Holden*, 126 Idaho at 761 n.4, 890 P.2d at 347 n.4. Rather, our holding, takes into consideration the binding precedent imposed upon us by *Lawrence*, thus determining that Idaho Code sections 18-6605 and 18-6606 can only be

10

enforced in circumstances, like this case, where the infamous crime against nature is committed in a nonconsensual manner as we have now clarified it.

3. <u>Under the standard we reiterate today, the evidence was sufficient to support Gomez-Alas' conviction for infamous crime against nature against the victim's will.</u>

"In order that one be incapable of giving legal consent, [the victim] must, through lunacy or other unsoundness of mind, be incapable of understanding the nature of the act and of giving intelligent consent thereto." *State v. Soura*, 118 Idaho 232, 236, 796 P.2d 109, 113 (1990); *see also* K.H. Larsen, *Rape or Similar Offense Based on Intercourse with Woman who is Allegedly Mentally Deficient*, 31 A.L.R.3d 1227 §2[a] (1970) ("[C]apacity to consent . . . presupposes the mental capability to form an intelligent opinion on the subject, with an understanding of the act, its nature, and its possible consequences.").

Here, the evidence provided that the victim was unable to give full consent due to her level of intoxication. Somewhere between the hours of 11:40 p.m. and 3:00 a.m., the victim testified that she had consumed three tequila shots and had multiple sips of her friend's Long Island Ice Tea. The victim testified that while she was still out at the bar she became dizzy and disoriented. The victim explained how she got home that night, that she vomited on the car ride home and was unable to remember all details about the ride home or how she made it to her bed that night. As to the acts committed by Gomez-Alas, the victim testified that she woke up to Gomez-Alas having sexual intercourse with her and that she was very confused, disoriented, did not know what was going on and thought she was still at the bar. Later on, the victim testified that it was not until later, after the act of cunnilingus had been committed, that she realized what was going on and started to push Gomez-Alas away from her. The victim noted that once Gomez-Alas left the room she again vomited.

The victim's testimony about her intoxication was corroborated by her roommate. The roommate testified that the victim appeared very drunk at the bar and was seen swaying side to side when the bartender asked for her to be taken home. The roommate also testified that once they returned to their dorm, she had to help the victim out of the car, into their room, get her ready for bed and help her into bed. The victim was unable to walk on her own. Another friend reiterated the same events.

Based on this testimony provided by three separate witnesses explaining the victim's level of intoxication, viewing all evidence in favor of the prosecution, there was more than sufficient

11

evidence establishing the victim was unable to give her consent to engage in the acts committed by Gomez-Alas. As the district court found, the victim was intoxicated when Gomez-Alas entered her closed bedroom without permission, climbed up to her top bunk, removed her clothes, and began performing oral sex on her with no reason to believe that she was consenting. Indeed, Gomez-Alas does not challenge the district court's conclusion that this sexual act occurred without the victim's consent. He simply maintains that lack of consent, without evidence of violence, force or threat is not enough to support a conviction for the infamous crime against nature charge. Such brutality is not required to maintain this conviction. Therefore, there was sufficient, substantial evidence that the act was perpetrated against the victim's will pursuant to Idaho Code sections 18-6605 and 18-6606. Gomez-Alas' conviction will stand.

## C. The district court did not abuse its discretion in denying Gomez-Alas' motion for a new trial.

"On the defendant's motion, the court may vacate any judgment and grant a new trial on any ground permitted by statute." I.C.R. 34(a). "We have concluded on prior occasions that [Idaho Code section] 19-2406 sets forth the only grounds permitting the grant of a new trial and, therefore, limits the instances in which the trial court's discretion may be exercised." *State v. Cantu*, 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997). Section 19-2406 permits a court to grant a new trial "[w]hen the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial." I.C. § 19-2406(5).

A jury may be misdirected when a court coerces a jury through an improper dynamite instruction. *See State v. Gomez*, 137 Idaho 671, 676, 52 P.2d 315, 320 (2002). "A dynamite instruction is one that directs a deadlocked jury to continue deliberating and exhorts those jurors holding a minority view to reconsider their position." *Id*. "In order to avoid jury coercion, Idaho has adopted a 'blanket prohibition against dynamite instructions.' " *Id*. (quoting *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988)). Even so, Idaho's appellate courts have "specifically disclaimed any intent to prohibit instructions directing further deliberations where the jury is not definitely deadlocked." *State v. Pullin*, 152 Idaho 82, 85, 266 P.3d 1187, 1190 (Ct. App. 2011) (citing *Flint*, 114 Idaho at 813, 761 P.2d at 1165).

The district court denied Gomez-Alas' motion for a new trial finding it had not misled the jury by giving an improper dynamite instruction because (1) the jury was not deadlocked and (2) even if the jury were deadlocked, the court's comments did not exhort or coerce a decision from

it. Gomez-Alas argues the district court's denial of his motion for a new trial was an abuse of discretion; since the jury appeared to be deadlocked, the district court was required to poll the jurors and guide them toward another appropriate period of deliberation. Instead, Gomez-Alas argues the district court ignored this step, found the verdict form was not in order, that the jury needed to decide the infamous crime against nature charge and then instructed the jury to evaluate that charge. This view of the record differs from the way the facts transpired.

Before we reach the merits of Gomez-Alas' claim, we address a procedural point raised by the State. The State briefly argues that Gomez-Alas did not preserve the issue of whether an improper dynamite instruction was provided below and did not argue on appeal that the alleged error constitutes fundamental error. "Generally, Idaho's appellate courts will not consider error not preserved for appeal through an objection at trial." *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010). Here, counsel for Gomez-Alas did not make a contemporaneous objection to the district court's comments to the jury. It was after the jury left to continue deliberating when counsel mentioned "concern" over the court's comments. Although nominal, we hold counsel's voicing concern adequately preserved the issue for appeal.

Reaching the merits, we hold the district court did not abuse its discretion in denying Gomez-Alas' motion for a new trial. First, the record fails to establish the foundational requirement that the jury was definitively deadlocked. While deliberating, the jury sent the court a note stating, "20.4 8G 4NG." Instruction 20.4 was the elements instruction for the infamous crime against nature count. Both parties below agreed the initial note was simply a status update and that it was improper to presume from the note that the jury was deadlocked. It was then that the court returned a note to the jury asking: "I would like to know whether you wish to continue your deliberations." The jury responded: "[w]e will continue to deliverate [sic] tonight." Sometime later after further deliberations, the jury returned to the courtroom with their verdict. While the boxes for the rape charge and its included offenses were checked, the box for the infamous crime against nature charge was unchecked. Although unchecked, there is no indication from the record the jury was deadlocked when the blank verdict was returned as to count two. The jury made no comments and provided no explanations as to why the infamous crime against nature charge had been overlooked. As noted below, after the court commented on the blank verdict, the court asked the jury to go back and deliberate as to the infamous crime against nature count, which the jury agreed to. Gomez-Alas fails to establish that the jury was ever deadlocked.

13

Even if we assume the jury were deadlocked, the court's comments did not "exhort or coerce" them. After the incomplete verdict form was provided to the district court, the court commented:

> I appreciate where—the time and effort you've put into it. The way this reads—the way I intended it—I don't know if it reads this way to you—is that you look at Count—there are two counts. You looked at Count I. You dealt with that. You dealt with the lesser included offenses for Count I, but this does not show what your verdict is for Count II, the infamous crime against nature. And I don't know—you know, of course, I'm not in there, so I don't know what happened there. I don't know. But I would ask that you go back and visit that count. We need to have a decision on Count II.

An off-the-record discussion was held between the court and the attorneys before the court continued:

> I want to be clear that this is—when I say you need to look at it, please talk. I don't want you to feel pressure. Do what you need to do. Review it. You returned a verdict on one count and the lesser included. We need the other—we need you to evaluate the other count. I know it's late. Do you wish to continue? Let me tell you this. You can go back there and decide if you want to continue or not and let me know. But I want you guys to decide, but we—I would like you to consider Count II. Okay. Thank you very much.

The jury did not ask any other questions. The jury then returned its verdict about ten minutes later, finding Gomez-Alas guilty of the infamous crime against nature charge. There is no record of pervasive confusion as there was in *Gomez*. The jury did not ask a single question of the court about what would happen if they could not reach a decision. The district court's comments did not cast any light on the merits of the case, it did not establish a deadline for reaching an ultimate verdict, it made no allusions to the undesirability of a mistrial, it did not mention the time or expense that had been taken to try the case and it did not insist the jury reveal any numerical split. *See State v. Timmons*, 141 Idaho 376, 378, 109 P.3d 1118, 1120 (Ct. App. 2005). Beyond that, despite the jury, on its own volition, providing the earlier status update, the district court's comments did not coerce minority members into surrendering their conscious conviction of honest beliefs. *See id.* The district court's comments simply suggested the jury continue deliberations in an attempt to reach a verdict of guilty or not guilty on the infamous crime against nature charge, if the jury so wished and was able. As a result, the district court did not abuse its discretion by denying Gomez-Alas' motion for a new trial. The court's comments were neither an improper dynamite instruction nor did those comments mislead or coerce the jury.

14

## VI. CONCLUSION

For the reasons set forth above, the district court is affirmed.

Chief Justice BURDICK, Justices BRODY and MOELLER, CONCUR.

STEGNER, J., dissenting.

I respectfully dissent. In order to perpetuate the "infamous crime against nature," the majority has created a definition of nonconsensual sexual conduct that is not found anywhere in the Idaho Code. In doing so, this Court has overstepped its judicial authority and has engaged in the creation of substantive legislation. If the legislature wants to breathe new life into the "infamous crime against nature" that is the legislature's domain and prerogative. It is *not* this Court's.

Ordinarily, "[c]ourts are not . . . empowered to change the plain meaning of unambiguous legislation *or to insert into statutes qualifying terms or provisions that obviously are not there*." *State v. Holden*, 126 Idaho 755, 761 n.4, 890 P.2d 341, 347 n.4 (Ct. App. 1995) (italics added). Idaho Code section 18-6605 provides that "[e]very person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment in the state prison not less than five years." I.C. § 18-6605. Notably, "Idaho Code § 18–6605 by its plain terms purports to apply to all persons and in all circumstances." *Holden*, 126 Idaho at 761 n.4, 890 P.2d at 347 n.4. However, the United States Supreme Court has held that the due process clause of the United States Constitution precludes criminalizing private, consensual sex acts between adults. *Lawrence v. Texas*, 539 U.S. 558, 578 (2003). Therefore, for section 18-6605 to remain constitutional, this Court is required to create in the statute a nonconsensual element, which never existed previously. *Holden*, 126 Idaho at 761, 890 P.2d at 347 ("A statute that is overbroad in its scope and thereby abridges protected freedoms generally need not be stricken in its entirety[,]" and instead is "declared invalid to the extent that [they reach] too far, but otherwise left intact.")

Regrettably, the majority takes this requirement one step further and crafts its own definition of nonconsensual behavior, something Idaho's Legislature has grappled with but not seen fit to do even though it has been afforded the opportunity to do so. The majority writes, "for purposes of the infamous crime against nature, we conclude there is no meaningful difference between an act that is performed without consent, without affirmative consent, and an act that is performed against a person's will." This definition, while perhaps seductive, does not align with Idaho's previous statutory definitions of "consent." It also dramatically expands Idaho's criminal

15

code without the legislature's involvement. If the legislature chooses to dramatically expand Idaho's criminal code in this way, that is the legislature's prerogative. However, it is particularly inappropriate for this Court to expand Idaho's criminal code without so much as a "by–your-leave" from the legislature. One of the effects of this action will be to enable prosecutors to obtain a conviction (as was done here) in cases that they were previously unable to do so before this decision.

The Idaho Code has few definitions of consent. One such definition of consent is located very near the "infamous crime against nature (Idaho Code section 18-6605) in Idaho Code section 18-6608, which criminalizes the offense of forcible penetration by a foreign object. That statute defines a nonconsensual act as "[a]gainst the victim's will[.]" I.C. § 18-6608(1). An action is made "[a]gainst a victim's will" by use of force, duress, or threats. *Id.* Notably, the majority rejects this definition. Had the majority accepted this definition, Gomez-Alas' appeal would have been successful, because the jury instruction, under which he was found guilty, did not include these terms. In order to sustain Gomez-Alas' conviction, the majority has to *reject* the legislature's only definition of "[a]gainst the victim's will" contained in the Idaho Code. By rejecting the legislature's definition, and supplanting it with its own, the majority is engaging in legislating.

Additionally, Idaho Code section 18-6101 defines what constitutes rape under Idaho law. While this statute does not provide a definition of "consent," it provides a list of examples constituting rape. I.C. § 18-6101. These proscribed conditions include the victim being under the age of consent, the victim lacking the mental capacity to consent, or the victim being unconscious. *Id.* The list also includes conditions including the perpetrator using force or threats. I.C. §§ 18-6101(4)–(5), 18-6101(10). This list is largely an enumeration of situations that would be considered nonconsensual. *Id.* Notably, nothing in the list of conditions under Idaho Code section 18-6101 includes a lack of affirmative consent. *See id.* It is also important to point out that Gomez-Alas was *acquitted* of rape under Idaho Code section 18-6101.

The majority appears to be shaping the "infamous crime against nature" as a "non-consent" offense. Generally, a non-consent offense permits convictions without a showing of force or incapacity, so long as the victim did not consent to the sexual acts. John F. Decker & Peter G. Baroni, *"No" Still Means "Yes": The Failure of the "Non-Consent" Reform Movement in American Rape and Sexual Assault Law*, 101 J. Crim. L. & Criminology 1081, 1084 (2011). But

16

the Idaho Legislature has never adopted a non-consent statute. Instead, Idaho has, in a general sense, required either forcible compulsion or incapacity to consent as a prerequisite for a sexual offense.

Nothing in this dissent should be read to suggest that either a "non-consent" or "force" type definition of consent is preferable to the other. Rather, this dissent demonstrates that today the majority has detoured from its appropriate lane of travel in deciding this case in the way that it has. While the rule adopted by the majority may be an understandable approach, this is not a decision for this Court to make. Instead, the decision on what constitutes consent for sex crimes in Idaho should be appropriately left to the Idaho Legislature.[1] Accordingly, I respectfully dissent.

---

[1] As noted previously by the Idaho Court of Appeals, the "infamous crime against nature" may, in its current iteration, be largely superfluous. As that court has noted:

> [M]ost nonconsensual conduct falling within the purview of I.C. § 18–6605 may also be prosecuted under more modern statutes that include oral and anal penetration within the definition of rape of a female, I.C. § 18–6101, or of a male, I.C. § 18–6108. Other statutes prohibit sexual molestation of minors. I.C. §§ 18–1506, 18–1508, and 18–1508A. In light of these more recent statutes, I.C. § 18–6605 appears to be superfluous except insofar as it proscribes bestiality and acts of competent, mutually consenting adults."

*Holden*, 126 Idaho at 762 n.5, 890 P.2d at 348 n.5. However, under the majority's decision, the infamous crime against nature has been given a new and different life than the one the legislature envisioned.