587 P.2d 835

**The STATE of Idaho, Plaintiff and Respondent,**

v.

**Robert James WATSON, Defendant and Appellant.**

**No. 12414.**

Supreme Court of Idaho.

Dec. 15, 1978.

Jeff Stoker of Rayborn, Rayborn & Ronayne, Twin Falls, for defendant and appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Susan P. Mauk, Asst. Atty. Gen., Boise, for plaintiff and respondent.

BISTLINE, Justice.

Defendant appellant Watson was arrested in Nevada and extradited to Idaho to stand trial on separate charges of rape, grand larceny and burglary, the latter two of which arose out of separate incidents unrelated to the rape. A preliminary hearing was held on the rape charge and Watson was bound over to district court where he was tried before a jury on August 4 and 5, 1976. A conviction resulted.

Prior to sentencing on the rape conviction, he received preliminary hearings on the burglary and grand larceny charges, following which informations were filed. He pled guilty to each. He was sentenced to 10 years on the larceny charge and 10 years on the burglary charge, the two to run consecutively. He was sentenced to 20 years on the rape conviction which sentence was to run concurrently with the other two. He appeals all three convictions.

## I.

Defendant first argues that this rape conviction should be reversed because the magistrate failed to make a probable cause determination at the time the arrest warrant was issued.[1] This assignment is without merit. While a suspect's arrest and pretrial detention, not based on the probable cause finding of a neutral and detached magistrate, is impermissible under the provisions of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 § 17 of the Idaho Constitution, the United States Supreme Court has held, as to the federal constitutional

1. Defense counsel, at the outset of proceedings below, moved to dismiss the information in this case on that ground. At a hearing on this motion, the defendant called the issuing magistrate, who testified to the procedure he routinely uses in issuing arrest warrants. During the course of his testimony on this topic, the magistrate stated, "we don't determine probable cause on the signing of the complaint."

provisions, that a conviction will not be vacated on the ground that the defendant was detained pending trial without determination of probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Prior to *Gerstein*, in *State v. Poynter*, 70 Idaho 438, 220 P.2d 386 (1950), the same question was raised and decided adversely to Watson's challenge:

> Appellant further contends that at the time of the arrest he was taken to jail and confined without any warrant of arrest, or for any crime that had been committed in the presence of any officer, and that such arrest was illegal and void, and therefore by innuendo he could not be prosecuted. Where the accused is personally before the court, the jurisdiction of the court to try him is not impaired by the manner in which he is brought before the court.
>
> The remedy of the appellant, if any, does not go to the limits of the prosecution, and has no bearing on the question of whether he is guilty or innocent, and such illegal arrest, if it was, is no reason why he should not answer the charge against him when brought before a tribunal having jurisdiction. The manner of arrest is not cause for exemption from prosecution and it follows that he is not wronged by being subjected to the jurisdiction, even if his detention in the first instance was unlawful.

*Id.* at 443, 220 P.2d at 390. We hold that reasoning applicable to the provisions of the Idaho Constitution. "The distinction between a pre-trial declaration of a right to a hearing and a post-conviction appeal for reversal on the basis of the absence of such hearing is a pragmatic and sensible distinction." *Pugh v. Rainwater*, 483 F.2d 778, 787 (5th Cir. 1973). Where an arrest warrant has been issued without a magistrate's finding of probable cause, the illegality of such an arrest, while providing grounds in habeas corpus proceedings and perhaps for asking application of the exclusionary rule as to confessions or evidence obtained in search pursuant to arrest does not invalidate a conviction which results from a fair trial of the issue of guilt. We point out also that an arrest is not required as an integral part of a criminal accusation and trial. Rather, it serves to insure the presence of the accused at the proceedings which name him as a violator and to insure his presence afterward to accept the judgment of the court if he is found guilty.

Moreover, Watson received a preliminary hearing on the rape charge only 7 or 8 days later at which adversary proceeding a judicial determination was made that the crime of rape had been committed, and that there was sufficient cause to believe Watson to have been the perpetrator. Even if Watson's version of the proceedings on the issuance of the rape warrant were accepted, he was at best detained illegally only until the preliminary hearing, during which time he raised no challenge by habeas corpus proceedings and was also properly detained on "holds" from other states on other charges.

## II.

Trial testimony which the jury heard on the State's presentation, and was at liberty to believe, gives us these facts. The prosecutrix, an 18-year-old married woman of Twin Falls, left her house at 7:10 p. m. on April 19, 1976, to take supper to her husband at his job. En route a white pickup passed her, its driver signalling that something was wrong with a tire on her car. After she halted, the driver of the pickup pulled up in front of her, stopped his vehicle and got out. After inspecting the tire, he opened her car door, knife in hand, and told her to slide over and do as she was told lest she get hurt. He got into her car and drove to a secluded canyon. She got out and started running but Watson, identified by her as the pickup driver, caught her, carried her back to the car and there forced her to have sexual intercourse with him. He then drove back to the highway and got into his pickup. She drove to her husband's place of employment and arrived there very visibly upset. After telling her husband, the two proceeded to the sheriff's office to report the alleged rape. A medical examination was performed on her soon after by her family doctor.

Watson's version of the incident was that he stopped to assist the prosecutrix who was standing by her car at the roadside. At her request that he check the car for a clunking noise, he drove them around on an inspection trip, during which he thought she appeared receptive to his advances and consented to sexual intercourse with him.

At the conclusion of the State's case and before taking the stand, Watson moved for directed acquittal on the grounds that the prosecution had presented no corroboration of the prosecutrix's testimony identifying him as her attacker.[2] The trial court denied the motion and defendant assigns this denial as error.

■■■ The assignment of error lacks merit. Watson's own testimony supplied any evidentiary deficiency in failing to sufficiently identify him as the assailant. The general rule is that on denial of a motion for directed verdict, any deficiency in the plaintiff's case may be supplied by evidence then put on by the defendant, if the defendant declines to stand on his motion and proceeds with his case. The defendant is, of course, not obliged to present any case. Here he did, and on his admitting the sexual intercourse, the issue was narrowed down to whether the sexual intercourse was consensual on the part of the prosecutrix, or forcible as alleged and testified by her. We note also that the defendant did not renew his motion at the close of the entire case. Had he done so,

> The rule is settled that when a defendant introduces evidence, he waives any objection to the denial of his motion to acquit at the close of the government's case. *United States v. Calderon,* 384 (348) U.S. 160, 164, n. 1, 75 S.Ct. 186, 99 L.Ed. 202 (1954); *United States v. Ambrose,* 483 F.2d 742 (6th Cir. 1973). The defendant may renew his motion at the close of all the proof, as the defendant did here, but the court will then consider the sufficien-

cy of the evidence on the record as a whole and not the sufficiency of the government's case in chief. *United States v. Ambrose,* supra; *Cline v. United States,* 395 F.2d 138 (8th Cir. 1968). It is not necessary, therefore, to determine the sufficiency of the evidence at the close of the government's case in chief since the defendant presented evidence and thus waived objection to the denial of his motion for judgment of acquittal made at that time.

*United States v. Black,* 525 F.2d 668, 669 (6th Cir. 1975). Similarly, the Supreme Court of Oregon held:

> If a defendant elects not to stand on his motion and presents evidence in his defense, the appellate court must consider all the evidence and if it is sufficient to sustain the conviction, the defendant cannot complain that his motion for acquittal made at the close of the state's case was denied.

*State v. Gardner,* 231 Or. 193, 372 P.2d 783, 784 (1962).

### III.

A more perplexing assignment of error is that the trial court should not have allowed the prosecutrix to testify before the jury that she was at that time pregnant, the trial taking place some 4 months after her encounter with Watson. No contention was advanced at trial, or here, that her pregnancy resulted from intercourse with Watson, nor was the testimony offered to prove that such did happen. The prosecutor satisfied the trial court that such evidence was germane as explaining why she had quit work, being thus "relevant to her character." We are not persuaded; and we see that evidence, in what was otherwise a fair and well-presented trial, as far-fetched and irrelevant. Although the State argues that it could not have prejudiced Watson, we disagree. Obviously it would be especially so where the State did not further pursue the

---

2. In view of our disposition of this assignment of error, we do not reach the question of the requirement of "corroboration" of testimony of a rape victim. For changing judicial attitudes toward this requirement, *see United States v.*

*Sheppard,* 186 U.S.App.D.C. 283, 569 F.2d 114 (1977); *People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975); *Arnold v. United States,* 358 A.2d 335 (D.C.1976).

cause of pregnancy, leaving that to the speculation of a jury's imagination. Where the pregnancy evidence was brought out prior to Watson's admission of intercourse, and *had* it been offered for the purpose of proving intercourse, such evidence should have been rejected on the strength of what the court said in *State v. Wilson,* 93 Idaho 194, 457 P.2d 433 (1969). There evidence of pregnancy in a rape case was a specific example of evidence which should not be allowed where prejudicial impact outweighs probative value.

If allegedly inflammatory evidence is relevant and material to the proof of an issue of fact, the trial court may exercise a sound discretion in determining whether or not the probative value is outweighed by the possible prejudicial effect, and to admit or exclude the evidence accordingly. In such a situation the court must balance the policy of protecting a defendant from undue prejudice, against the rule of logical relevance. . . .

However, reception at trial of irrelevant and immaterial evidence, which serves no probative function, but serves only to inflame the minds and passions of the jury to the prejudice of the defendant is reversible error. . . .

Representative examples of irrelevant, immaterial and inflammatory material, the admission of which into evidence was held to be reversible error, include the following:

[E]vidence, in rape prosecution, that victim was pregnant as a result of the rape . . . ..

*Id.* at 196–97, 457 P.2d at 435–36 (citations omitted).

Under the circumstances of this case, the prosecutor should not have introduced the issue of pregnancy.[3] If such testimony came before the jury inadvertently, the prosecutor should have protected his record by seeking its expungement, for, as the Supreme Court of Washington said:

This evidence was irrelevant and prejudicial. . . . The pregnancy of the prosecutrix had no bearing whatever upon the identity of anyone who carnally knew her or the question of consent to the act. In the instant case, the rule in statutory rape cases does not apply. Pregnancy does not tend to prove the commission of a crime or to establish paternity. Evidence regarding it was prejudicial.

*State v. Chambers,* 50 Wash.2d 139, 309 P.2d 1055, 1057 (1957). In that case, the conviction was reversed.

■ While the testimony here was improper, and may well have been prejudicial, a reversal does not necessarily follow. Defendant could have readily cured the error of the trial court and provides no reason for not doing so. The challenged testimony came in in this way:

[Prosecutor]: Why did you quit?

[Defense counsel]: Your Honor, objection, irrelevant. I don't think her work record is relevant to the proceedings here before us today.

THE COURT: The objection is overruled. You may answer.

[Witness]: I quit because I had found out that I was pregnant and decided I would just stay home. . . .

Defense counsel voiced no further objection, and in particular made neither motion to strike nor request that the jury be instructed to disregard the answer. On cross-examination he asked no questions of the witness on the subject and did not elicit the further information as to who was the father of the unborn child.

As above noted, no claim was ever made that the pregnancy resulted from the alleged rape. If the prosecutor had intimated such, or if defendant feared speculation by the jury on the subject, it would have been easy to point out by questions or argument that there was no evidence that the defendant's intercourse with the prosecutrix was the cause of the pregnancy. The court,

3. The pregnancy of the prosecutrix was known to the court and counsel, the trial having at one time been postponed for that very reason.

although it allowed the question which led to the challenged testimony, presumably would have stricken the answer on motion, and given a cautionary instruction as well. No such instruction was requested, and no motion was made.

Accordingly, we hold that the giving of the pregnancy testimony does not require a reversal of the conviction of rape. *See Ineas v. Union Pac. R. Co.*, 72 Idaho 390, 241 P.2d 1178 (1952); *Shaddy v. Daley*, 58 Idaho 536, 76 P.2d 279 (1938).

### IV.

▆▆▆▆ Watson's other assignment of error regarding admissibility of evidence concerns the admission of testimony by police officers pertaining to the fingerprints which were found on the pickup truck Watson was driving. He argues that such testimony amounted to "expert opinion" for which there was laid no proper foundation. We disagree. Officer Haynes, who gave the key fingerprint testimony, testified that he had attended over 250 hours of schooling on this topic alone, had read extensively in the field, and had processed perhaps 20,000 sets of fingerprints in his career. He then skillfully demonstrated many points of identity between the defendant's card and the print found in the vehicle, saying that he could spot 25 such points. The competency of an "expert witness" to testify on matters of opinion is an issue largely within the discretion of the trial court. *Bean v. Diamond Alkali Co.*, 93 Idaho 32, 454 P.2d 69 (1969). We hold, under the facts of this case, that the trial court was well within its discretion in admitting this evidence. And, as with the motion for directed acquittal at the close of the prosecution's case, we note that the assignment is moot, Watson himself having established his presence with the prosecutrix and the excursion in her automobile, not in his pickup.

### V.

After the defense rested its case, a short recess was taken. On reconvening the court immediately commenced instructing the jury. When instructing was fully concluded, defense counsel asked: "I assume that my objections to the instructions are reserved, is that correct?" The trial court replied: "The rule was changed effective the 1st of July. You do not have to register objections. They are automatic." (The trial court's reference was evidently to I.R.C.P. 51 which has been amended three times in the last 3 years. The pertinent *criminal* rule, I.C.R. 30, has remained unchanged throughout the relevant time period.)

Watson on appeal now argues that this procedure denied him an adequate opportunity to voice and record his objections prior to the giving of instructions. Reliance is placed upon *State v. Goodrich*, 97 Idaho 472, 479, 546 P.2d 1180, 1187 (1976), in which case it was stated:

> However, we believe that in accordance with I.C.R. 30, counsel must be permitted by the trial court to make his objections and the grounds for the objections to proposed jury instructions known for the record. An opportunity must be extended to counsel at some stage in the proceedings, prior to the time the jury is charged, to voice objections so as to preserve them for possible review upon appeal, and those proceedings must be made a part of the record. [Footnote omitted.] [4]

4. I.R.C. 30 as quoted in *Goodrich, supra* note 11, at 479, 546 P.2d at 1187, reads:

   *Instructions.*—At the close of the evidence or at such earlier time as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. At the same time copies of such requested instructions shall be furnished to adverse parties. The court shall inform counsel of its proposed actions upon the requested instructions and shall allow counsel a reasonable time within which to examine and make objections outside the presence of the jury to such instructions or the failure to give requested instructions. Such objections shall state distinctly the matter to which he objects and the grounds of his objections, which objections shall be made a part of the record. No party may assign as error any portion of the change [sic] or omission therefrom unless he objects thereto prior to the time that the jury is changed. [sic] The court shall instruct the jury prior to final argument.

We agree with the State that the lack of opportunity to object is not established simply because the court did not ask for objections. Where a trial court inadvertently or even purposefully imposes on either party or both a variation in procedure, there yet remains an obligation to make a timely objection. *State v. Gish,* 87 Idaho 341, 393 P.2d 342 (1964); *State v. Spencer,* 74 Idaho 173, 258 P.2d 1147 (1953). Counsel should not be so timid as to hesitate to ask a trial court at what point in time the court's proposed given instructions will be exposed for their review, nor should counsel hesitate to politely interrupt the court with a reminder that some element of procedure is being varied or omitted. The language of *Hurt v. Monumental Mercury Mining Co.,* 35 Idaho 295, 302, 206 P. 184, 186 (1922), is applicable here:

> Counsel cannot sit quietly by, knowing that error has been committed, and await the verdict of the jury, and then upon motion for a new trial urge such error as a ground for new trial.

When the trial court inadvertently embarks upon an improper procedure, it is the responsibility of counsel to object or otherwise call it to the trial court's attention *while there is still the opportunity to cure the defect.* Here, while it is apparent that the trial court did not follow the procedure required by Rule 30, it is equally apparent that defense counsel acquiesced. The situation would be entirely different had the attention of the court been properly directed to this question and then the rule yet not followed.

### VI.

Appellant assigns further error going to the content of the instructions. No objection having been made in the trial court, such assignments are not entitled to consideration on appeal. While there were unusual circumstances which led to defendant's failure to protect his record, as above, defendant acquiesced in the procedure. We may not speculate as to what the judge would have done had the defendant registered his objections on the record. In the absence of such a record, we must find no error in this regard.

### VII.

Watson argues that the grand larceny and burglary sentences must be overturned because of the trial court's failure to follow the sentencing procedures laid down by this Court in *State v. Colyer,* 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). In that case, the Court stated that the voluntariness of defendant's plea would demand inquiry into three areas:

> (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty.

*Id.* at 34, 557 P.2d at 628. Without question, the trial court did not follow the procedure mandated by *Colyer,* which at that time was yet an unannounced opinion. The principles of *Colyer* are applicable, the opinion in that case being based upon *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and circuit court cases from the Fourth, Fifth, Sixth, Eighth and Ninth Circuits which are cited in *Colyer.* We must ascertain whether the procedures which were followed in this case substantially complied with *Colyer.*

At the hearing held on October 1, 1976, identical procedures were used in accepting defendant's guilty plea to the two separate charges, that of grand larceny and that of first degree burglary. The court ascertained, first, that defendant was represented by the public defender and that defendant was satisfied with that representation. After the clerk of the court then read the information in full and delivered a copy to Watson, Watson was instructed of his right to a delay of not less than one day

before entering his plea; he waived that right. The court ascertained that Watson was informed of the maximum sentences, namely, 14 years on the grand larceny and 15 years on the burglary. Sentences were then imposed as above related.

■ From the colloquy outlined above, it cannot be said that Watson's "waiver or understanding can be fairly inferred from the record as a whole." *Id.* at 34, 557 P.2d at 628. We could perhaps hold that Watson, represented by counsel and fresh from a trial at which he had personally been present, had been thereby made acquainted with the full panoply of his constitutional rights, and that the entering of his guilty pleas was knowingly and intelligently done. We could observe also that his counsel was present, and we could assume that counsel had adequately advised him as *Colyer* requires of district courts. And we *could* be correct in so doing. We decline to do so, not so much on the basis of the facts of the instant case, but with a view toward the effect of such a precedent on the countless number of cases yet to come before district courts. We cannot say which of the various defendants with varying intelligences and with diverse criminal encounters may be knowledgable of the law and which may not. What was said in *Colyer* requires that on motion being made upon remand, Watson's guilty pleas must therefore be set aside, with leave to plead anew.

The judgment of conviction of rape is affirmed. The convictions of grand larceny and of burglary in the first degree are reversed, with directions that on remand the court shall on motion allow the defendant leave to plead anew to those charges.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur in affirming the conviction of rape.

McFADDEN, DONALDSON and BAKES, JJ., concur in allowing Watson to plead over on burglary and larceny charges.

SHEPARD, C. J., would affirm all convictions.