# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49435

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

JAMEEL FAKHRI AL MUTHAFAR,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2024 Term

Substitute Opinion filed: December 6, 2024

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED JUNE 13, 2024, IS HEREBY WITHDRAWN.

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel Hoagland, District Judge. Michael J. Oths, Magistrate Judge.

The judgment of the district court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Jason Pintler argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. John McKinney argued.

---

MOELLER, Justice.

Jameel Fakhri Al Muthafar ("Al Muthafar") appeals his convictions for aggravated assault and attempted strangulation. Al Muthafar contends that the district court erred by denying his motion to dismiss the Information after the magistrate allowed hearsay statements at the preliminary hearing over his objection. The statements at issue were made to a nurse at the Family Advocacy Center and Education Services, commonly known as FACES of Hope ("FACES"), during a dual medical and forensic examination. Al Muthafar argues that, absent these inadmissible statements, there was insufficient probable cause to bind the case over to the district court; therefore, his motion to dismiss the Information should have been granted. Al Muthafar also asserts that the district court abused its discretion in sentencing him to a unified

1

sentence of fifteen years, with five years fixed. Al Muthafar asks this Court to vacate his conviction and grant him a new trial. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 2020, K.S.[1] called the police while at a Rite Aid store in Boise, Idaho. She was seeking help since she was off her medications and expressed that she was suicidal. K.S. was 37 years old on the night in question; however, she is "five points away from being developmentally delayed," and essentially functions at the level of a 13-year-old. Two officers responded to the call and took K.S. to the emergency room at St. Alphonsus Hospital.

K.S. presented at the emergency room complaining of injuries resulting from an attack by her romantic partner, Al Muthafar. A doctor at St. Alphonsus diagnosed K.S. as suffering from injuries related to an "alleged assault," called the Boise Police Department, and provided instructions to follow up at FACES as needed. Detective Ian Seavey responded to the call from the doctor and, after talking with K.S. and medical staff at the hospital, referred K.S. to FACES to complete a forensic examination. That same night, Detective Seavey drove K.S. to the FACES building downtown where they were met by a nurse, Casey Donahue.

Donahue is a registered nurse at the Treasure Valley Hospital and a member of the St. Alphonsus Sexual Assault Response Team. Donahue has a nursing degree and "has completed the additional training and orientation to serve as a SANE [Sexual Assault Nurse Examiner] nurse." It was in her capacity as a SANE nurse that Donahue examined K.S. Detective Seavey and a victim-witness coordinator were present in the room during Donahue's examination to hear her story and thereby reduce any trauma K.S. might face in having to tell it multiple times.

Donahue's examination of K.S. included an in-depth physical assessment, which required taking her vitals and completing a health and medical history. Donahue also conducted a forensic exam, which entailed photographing her injuries, conducting a pelvic exam, providing emergency morning-after contraception and prophylactic antibiotics for sexually transmitted diseases, and ensuring that K.S. was safe to return to her home.

During the examination, Donahue asked K.S. to describe any symptoms she was experiencing. K.S. responded that "[h]er main symptom was pain." K.S. went on to describe the cause of her symptoms, stating that over the span of 12 hours she was "beaten with hands," received "multiple punches," was "bitten at least three times," and was "strangulated with a

---

[1] Out of respect for the victim, who may be developmentally disabled, we refer to her by her initials.

pillow around her neck . . . ." When asked who perpetrated these acts on her, K.S. stated "it was Jameel," and expressed that she thought she was going to die that day.

The next day, after police questioned Al Muthafar, he was arrested and charged with one count of aggravated assault and one count of attempted strangulation.

Al Muthafar's preliminary hearing took place on April 7, 2020. The State called only Donahue and Detective Seavey as witnesses. K.S. did not testify because she was "in the Ada County Jail" for an unrelated matter until the night before the hearing. During Donahue's direct examination, she addressed the purpose of her examination of K.S. by explaining that the "purpose was to gather forensic evidence on a stated assault." The State went on to inquire whether this was a medical examination, to which Donahue replied in the affirmative. On cross-examination, defense counsel highlighted that Detective Seavey requested that Donahue go to FACES with K.S. "[to] complete an exam . . . and an interview . . . ."

Donahue further testified to statements K.S. made to her during the examination at FACES. This line of inquiry drew a hearsay objection from Al Muthafar. In response to this objection, the magistrate court inquired, "And why would they not be statements given to medical personnel for the purpose of diagnosis?" Al Muthafar contended that Donahue was "doing a forensic interview," and that K.S. "went directly from St. Al's hospital to the FACES interview"; thus, all medical diagnosis had already been provided and the FACES exam was "purely for investigatory purposes." In reply, the State laid additional foundation for the services that FACES nurses provide in their role, including specific medical treatments related to sexual assault and domestic violence victims.

Before ruling on the objection, the magistrate court clarified with Donahue that as part of her examination she completed a report that recommends whether a follow up is needed. Upon hearing Donahue's testimony, the magistrate court overruled Al Muthafar's objection, holding that the testimony fell within the hearsay exception set forth in Idaho Rule of Evidence 803(4). The court went on to explain that the fact that a statement "made by a patient may also have law enforcement uses does not mean that it can't also be for the purpose of treatment or medical diagnosis." Defense counsel then requested a standing hearsay objection as to the line of questioning, which the magistrate court granted.

After Donahue's testimony, Detective Seavey took the stand and focused his testimony on his interaction with Al Muthafar and his subsequent search of Al Muthafar's trailer. Detective

3

Seavey also testified that Al Muthafar had stated that K.S.'s injuries were self-inflicted, explaining that she "did everything to herself injury-wise." Despite this statement, it was Detective Seavey's belief that based on the nature and extent of K.S.'s injuries, including bite marks in places she could not reach, as well as her detailed description of how she incurred her injuries, K.S. could not have inflicted those injuries on herself. At the end of the preliminary hearing, the magistrate court found that the State had proved there was enough evidence to demonstrate probable cause to bind Al Muthafar over to district court.

Following his arraignment, Al Muthafar filed a motion to dismiss the commitment and Information, arguing that the magistrate court erred in admitting Donahue's hearsay statements. Al Muthafar argued that the statements did not fall under the Rule 803(4) hearsay exception because the State failed to establish that K.S.'s statements at FACES were made for the purpose of medical treatment since K.S. had already received medical care at St. Alphonsus. The district court denied the motion, finding that the services Donahue provided "were akin to seeking a second medical opinion." The district court also held that although there was a forensic aspect to the FACES exam, the "fact that there [was] a dual purpose to the examination does not override the medical nature."

The case proceeded to a jury trial where both Donahue and K.S. testified. At trial, the hearsay concerns regarding the FACES interview were not renewed because K.S. directly testified to her injuries and their causes. At the conclusion of the trial, the jury found Al Muthafar guilty of both aggravated assault and attempted strangulation.

At sentencing, a question arose as to Al Muthafar's competency based on a report submitted by the defense suggesting that he suffered from a possible psychosis. Based on this concern, the district court ordered a full psychological evaluation pursuant to Idaho Code sections 18-211 and 18-212 to determine whether Al Muthafar was fit to proceed. Upon reviewing the initial competency report, the district court found that Al Muthafar was not competent and entered an order of commitment. After a period of treatment at State Hospital South, it was determined that Al Muthafar was "malingering." The report submitted to the district court concluded that Al Muthafar was not "having any psychological issues to support a claim of continued incompetency"; rather, he was "faking delusions and/or hallucinations."

The district court subsequently sentenced Al Muthafar to fifteen years with the first five years fixed. Al Muthafar timely appealed his judgment of conviction and sentence.

4

## II. STANDARDS OF REVIEW

Evidentiary rulings, sentencing determinations, and a magistrate court's finding of probable cause all fall within a lower court's discretionary powers. *Perry v. Magic Valley Med. Ctr.*, 134 Idaho 46, 50, 995 P.2d 816, 820 (2000); *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007); *State v. Owens*, 101 Idaho 632, 636, 619 P.2d 787, 791 (1979). Thus, each is reviewed under the abuse of discretion standard. *Perry*, 134 Idaho at 50, 995 P.2d at 820; *Oliver*, 144 Idaho at 726, 170 P.3d at 391; *Owens*, 101 Idaho at 636, 619 P.2d at 791. We review an alleged abuse of discretion by determining whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Ochoa*, 169 Idaho 903, 912, 505 P.3d 689, 698 (2022) (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

Accordingly, we will overturn a magistrate court's decision that probable cause exists "only on a clear showing that the committing magistrate abused his discretion." *State v. Schall*, 157 Idaho 488, 491, 337 P.3d 647, 650 (2014). The denial of a motion to dismiss following a preliminary hearing will likewise "not be disturbed on appeal if, under any reasonable view of the evidence including permissible inferences, it appears likely that an offense occurred and that the accused committed it." *Id.* (quoting *State v. Holcomb*, 128 Idaho 296, 299, 912 P.2d 664, 667 (Ct. App. 1995)). However, "[e]ven if evidence was admitted in error, this Court will not grant relief if [it] find[s] the error to be harmless." *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015).

## III. ANALYSIS

### A. Because the magistrate court erroneously admitted Donahue's hearsay testimony at the preliminary hearing, the district court erred in denying Al Muthafar's motion to dismiss the Information.

Al Muthafar first contends that Donahue's testimony was improperly admitted at his preliminary hearing under Idaho Rule of Evidence 803(4)—the hearsay exception for statements made for medical diagnosis or treatment during the preliminary hearing. Al Muthafar argues that K.S.'s purpose in making the statements to Donahue was not to obtain a medical diagnosis or treatment, and lacking any testimony from Donahue evincing her purpose, the State failed to

meet its burden of showing probable cause. Absent a showing of probable cause, Al Muthafar argues that the district court should have granted his motion to dismiss the Information.

" 'Hearsay' is an 'out-of-court statement offered in evidence to prove the truth of the matter asserted." *Takhsilov v. State*, 161 Idaho 669, 674, 389 P.3d 955, 960 (2016) (quoting *State v. Herrera*, 159 Idaho 615, 621, 364 P.3d 1180, 1186 (2015)); I.R.E. 801. Hearsay evidence is generally inadmissible unless it falls within an exception provided by the Idaho Rules of Evidence, or another rule promulgated by this Court. *State v. Hill*, 161 Idaho 444, 448, 387 P.3d 112, 116 (2016). Idaho Rule of Evidence 803(4) provides a hearsay exception for statements made for medical diagnosis or treatment. *See* I.R.E. 803(4). Under Rule 803(4), a proponent must show that the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; or their source." *Id.* This hearsay exception is premised on the assumption that such statements are generally trustworthy because the declarant has a strong interest in receiving proper medical treatment and, therefore, has a strong motive to be truthful in giving pertinent information to a physician. *State v. Kay*, 129 Idaho 507, 518, 927 P.2d 897, 908 (Ct. App. 1996). Under Idaho law, trial courts have broad discretion in deciding whether to admit hearsay evidence under an exception, and "this Court will not overturn an exercise of that discretion absent a clear showing of abuse." *Stanfield*, 158 Idaho at 331, 347 P.3d at 179.

Here, it is undisputed that Donahue's testimony regarding statements K.S. made to her during the FACES interview are hearsay since they were offered to prove the truth of the matter asserted—that Al Muthafar committed the alleged crimes against K.S. Thus, the proper inquiry is whether these hearsay statements fall within the Rule 803(4) exception. The parties do not dispute that the second prong of 803(4), which requires the proffered statement to describe past or present symptoms or their source, is satisfied. Indeed, K.S. told Donahue that "[h]er main symptom was pain," which arose from "Jameel" when he "folded her fingers back toward the back of her hand," "punched her on the side of her neck and on her right ear," and "choked" her. Thus, the heart of the disagreement between the parties is whether K.S.'s statements satisfy the first prong of Rule 803(4)—that her statements were *made for* medical diagnosis. Based on our review of the preliminary hearing transcript, we conclude that the State failed to meet its burden of proof in establishing that K.S.'s statements were made for medical diagnosis.

We first note that K.S. was capable of making statements for the purpose of medical diagnosis. Even though she may function as a 13-year-old, we have previously explained that children as young as six or four can make statements for purposes of medical diagnosis or treatment. *See State v. Christensen*, 166 Idaho 373, 379, 458 P.3d 951, 957 (2020). The issue here is that Donahue's testimony at the preliminary hearing failed to demonstrate that K.S.'s statements at FACES were for the purposes of receiving a medical diagnosis or treatment.

The full appellate record indicates that the State had access to evidence that likely would have supported its position, but it failed to develop those facts at the preliminary hearing. For example, the State had medical records from K.S.'s visit to St. Alphonsus and additional records from FACES. There was even an audio recording of the FACES interview and police reports, all of which suggest K.S.'s statements were made, at least in part, for the purpose of receiving a medical diagnosis or treatment. K.S. first called the police that night because she was feeling suicidal, and K.S. recounted the physical, mental, and sexual abuses committed against her to Donahue at FACES. K.S. described her pain, as well as injuries resulting from being beaten, punched, bitten, kicked, and then strangled with a pillow. Donahue conducted an examination and questioning that could arguably be said to have both medical and forensic purposes, similar to the CARES recordings we have previously considered and determined were admissible under Rule 803(4). *See Christensen*, 166 Idaho at 379, 458 P.3d at 957.

However, when the State presented its case before the magistrate court at the preliminary hearing, it relied on Donahue's testimony to establish the purpose of the interview. Donahue testified that K.S.'s examination had a dual purpose—to gather "medical" and "forensic evidence on a stated assault"—but her testimony focused almost entirely on the forensic components of the examination. Donahue explained that K.S. was photographed and examined as part of the "forensic exam," and that K.S. was asked "interview" questions so Donahue could know "what happened from the start." Donahue stated that these questions were asked only for "clarification." Aside from briefly noting K.S.'s symptoms of pain, Donahue's testimony under the State's questioning only described the physical exam she typically conducts at FACES. Donahue did not testify about the actual physical assessment she performed on K.S., the health and medical history she completed, her diagnosis of K.S.'s injuries, any treatment she rendered or prescribed, or the content of K.S.'s medical records. In sum, there was no evidence offered that demonstrated how the statements K.S. made during the FACES interview pertained to a

medical purpose. Such testimony was necessary to meet the foundational requirements of Rule 803(4)(A) and (B).

While the trial and appellate record contain various medical records that offer more insights into the scope of the FACES interview, none of this evidence was presented *at the preliminary hearing*. The State could have supported Donahue's testimony by offering K.S.'s physical assessment, the audio recording of Donahue's questioning, and more specific testimony from Donahue, but it failed to do so. Because the preliminary hearing transcript on its own does not demonstrate a dual medical purpose for the interview, the State failed to establish that the hearsay statements attributed to K.S. were made for the purpose of receiving a medical diagnosis and treatment from FACES. Therefore, the State also failed to meet its burden to demonstrate that the Rule 803(4) exception applied. As a result, the magistrate court's decision to bind Al Muthafar over to the district court for trial was based on inadmissible hearsay evidence.

Accordingly, we conclude that the district court erred in determining that there was no abuse of discretion by the magistrate court in admitting the hearsay statements. The district court likewise erred in denying Al Muthafar's motion to dismiss the Information. Having determined that these errors occurred, we must next consider whether these errors were harmless or warrant reversal.

**B. Under *State v. Mitchell*, any error at the preliminary hearing phase was rendered harmless because Al Muthafar was provided a fair trial.**

Al Muthafar argues that the district court's error in denying his motion to dismiss was not harmless because it impacted the entirety of the criminal proceedings and, therefore, requires us to dismiss the Information and vacate his conviction. Al Muthafar's argument essentially invites us to reconsider the holdings in two important cases: *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), and *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336 (1983). Al Muthafar contends, "[t]o the extent that this Court finds that *Perry* did not implicitly overrule *Mitchell*, this Court should now explicitly do so." Because we conclude that *Mitchell* and *Perry* are not in conflict, we disagree.

When a defendant appeals "from an objected-to, non-constitutionally-based error," the defendant bears the burden of establishing an error occurred. *State v. Garcia*, 166 Idaho 661, 673, 462 P.3d 1125, 1137 (2020) (quoting *Perry*, 150 Idaho at 222, 245 P.3d at 974). At that point, the burden shifts to the State to demonstrate "that the error is harmless beyond a reasonable doubt." *Id.* (quoting *Perry*, 150 Idaho at 222, 245 P.3d at 974). "Harmless error is

8

'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' " *Id.* at 674, 462 P.3d at 1138 (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). The appellate court must weigh "the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* "When the effect of the error is minimal compared to the probative force of the record establishing guilt 'beyond a reasonable doubt' without the error, it can be said that the error did not contribute to the verdict rendered and is therefore harmless." *Id.* In contrast, structural defects "affect 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Perry*, 150 Idaho at 222, 245 P.3d at 974 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Structural defects "are so inherently unfair that they are not subject to harmless error analysis." *Id.*

*Mitchell* instructs us that where evidence admitted during a preliminary hearing is later found to be inadmissible, the harmless error standard still applies if the defendant subsequently received a fair trial. In *Mitchell*, the defendant was convicted of first-degree murder after she arranged to have her husband killed. 104 Idaho at 494, 660 P.2d at 1337. She was interviewed by an officer and two detectives who, after giving the defendant a printed form setting forth her *Miranda* rights and containing an express waiver of those rights, began to tape record the interview. *Id.* at 495, 660 P.2d at 1338. Prior to and during the interview, the defendant ingested alcohol and made several incriminating statements. The defendant filed several pre-trial motions to suppress the recorded interrogation or any reference to it on the basis that she was incapable of knowingly and voluntarily waiving her *Miranda* rights due to her intoxication. *Id.* The trial court determined that her statements became involuntary approximately one-third of the way into the interview; thus, it suppressed any reference to the interrogation past that point. *Id.*

After the jury returned a guilty verdict for murder in the first degree, the defendant appealed, arguing that the trial court erred by denying her motion to dismiss because after the motion to suppress was granted, there was insufficient probable cause to bind her case over for trial. *Id.* We rejected that argument, holding instead that preliminary hearing evidence later found to be inadmissible was not grounds for vacating her conviction since she subsequently received a fair trial. *Id.* at 500, 660 P.2d at 1343. Just as an arrest warrant issued without a magistrate court's finding of probable cause "does not invalidate a conviction which results from a fair trial of the issue of guilt," inadmissible evidence admitted in a preliminary hearing does not warrant

9

vacating a conviction where the error is cured by a fair trial. *Id*. (quoting *State v. Watson*, 99 Idaho 694, 587 P.2d 835 (1978)).

Twenty-seven years later, in *Perry*, this Court re-examined the origins of the harmless error doctrine, but did so generally, in the context of errors occurring at trial. 150 Idaho at 220–24, 245 P.3d at 972–76. We also articulated Idaho's fundamental error standard, which created a three-prong inquiry[2] for alleged errors that are not followed by a contemporaneous objection. *Id.* at 228, 245 P.3d at 980. In *Perry*, the defendant was convicted of two counts of sexual abuse of a child under sixteen years of age for acts against T.P and two counts of misdemeanor battery against H.P. *Id*. at 216, 245 P.3d at 968. Before trial, the defendant filed a motion in limine seeking permission to present testimony that T.P. had made a prior false allegation of a sex crime involving a shower incident against H.P., which was later partially retracted. *Id.* at 214, 245 P.3d at 966. At trial, the district court limited the evidence, holding that the probative value was outweighed by the danger of allowing extraneous issues to come before the jury. *Id.* at 215, 245 P.3d at 967. On appeal, this Court reasoned that the district court did not err in limiting evidence that T.P. had lied or exaggerated about the shower incident and affirmed the conviction. *Id.* at 231, 245 P.3d at 983. We did not reach the burden shifting since we concluded there was no error in the first instance. Additionally, we held that the alleged acts of prosecutorial misconduct—which were not followed by a contemporaneous objection—did not rise to the level of fundamental error even though they constituted misconduct. *Id.* at 231, 245 P.3d at 983.

*Perry* does not reference *Mitchell* even once throughout the decision, and we are unpersuaded that this appeal demonstrates that the *Mitchell* decision should be abrogated. *Perry*'s silence regarding *Mitchell* cannot be read as an implicit overruling of this Court's prior jurisprudence. Instead, *Perry* should logically be read to supplement, rather than supplant *Mitchell*, since *Perry* reviewed and summarized the harmless error and fundamental error

---

[2] The three prongs delineated in *Perry* are as follows:

> 1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings. If there is insufficient evidence in the appellate record to show clear error, the matter would be better handled in post-conviction proceedings. Placing the burden of demonstrating harm on the defendant will encourage the making of timely objections that could result in the error being prevented or the harm being alleviated.

150 Idaho at 226, 245 P.3d at 978.

standards of this Court. As was the case in *Mitchell*, Al Muthafar has pointed to no structural defect for us to review.

Al Muthafar also argues that the *Mitchell* harmless error analysis is inapplicable in light of Article I, section 8 of the Idaho Constitution, which provides:

> No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate, except in cases of impeachment, in cases cognizable by probate courts or by justices of the peace, and in cases arising in the militia when in actual service in time of war or public danger; provided, that a grand jury may be summoned upon the order of the district court in the manner provided by law, and provided further, that after a charge has been ignored by a grand jury, no person shall be held to answer, or for trial therefor, upon information of public prosecutor.

Al Muthafar contends that subject-matter jurisdiction is conveyed upon the district court only upon the filing of a *valid* indictment or information. *State v. Quintero*, 141 Idaho 619, 621 (2005). Therefore, he argues that because the *Mitchell* rule disregards a defendant's constitutional right to be prosecuted by a validly filed information or indictment, it is manifestly wrong and should be disavowed. However, Al Muthafar confuses the standard for a legally sufficient charging document and provides no authority for his position that an information predicated on evidence in a preliminary hearing that is later determined to be inadmissible renders the information invalid.

This Court has recognized the constitutional necessity of a valid indictment or information. For example, in *State v. Lute*, 150 Idaho 837, 841, 252 P.3d 1255, 1259 (2011), we held that where "… a valid indictment was never entered [against the defendant], the district court never had subject-matter jurisdiction over Lute's case under Article I, section 8 of the Idaho Constitution." Accordingly, after concluding that the grand jury that indicted the defendant was acting "without authority" because its commission had expired, we remanded the case with instructions to vacate the defendant's conviction. *Id*. at 840, 252 P.3d at 1258. Nevertheless, we have also held that "subject matter jurisdiction does not depend on the particular parties in the case or on the manner in which they have stated their claims, nor does it depend on *the correctness of any decision made by the court*." *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004) (emphasis added). *See also State v. Wisdom*, 161 Idaho 916, 919, 393 P.3d 576, 579 (2017). In *Quintero*, we explained the prerequisites of a valid information:

11

> To be legally sufficient, an indictment or information must meet two standards: first, there is the question of whether an indictment or information is legally sufficient for the purpose of due process during proceedings in the trial court, and second, there is the separate question of whether an indictment or information is legally sufficient for the purpose of imparting subject matter jurisdiction.

141 Idaho at 622, 115 P.3d at 713. A charging document will confer subject matter jurisdiction if it "contains a statement of the territorial jurisdiction of the court and a citation to the applicable section of the Idaho Code." *Id*. Therefore, it is the language of the charging document that determines whether subject-matter jurisdiction is proper.

Here, both the Complaint and the Information included the requisite "statement of the territorial jurisdiction" and a citation to the applicable code section. Thus, any evidentiary error in the decision to bind the defendant over to the district court did not render the Information invalid. Accordingly, the *Mitchell* harmless error test remains good law and is controlling in this case.

For the forgoing reasons, we affirm Al Muthafar's judgment of conviction notwithstanding the magistrate's error in admitting Donahue's testimony at the preliminary hearing. As we held in *Mitchell*, where a magistrate court errs "in relying on evidence at the preliminary hearing that is ultimately determined to be inadmissible, the error is not a ground for vacating a conviction where the appellant received a fair trial and was convicted, and there is sufficient evidence to sustain the conviction." *Mitchell*, 104 Idaho at 500, 660 P.2d at 1343. We conclude from our review of the record that Al Muthafar received a fair trial; he was found guilty by a jury beyond a reasonable doubt based on evidence that was properly admitted. There was ample evidence to sustain his conviction. While the admission of the hearsay statements at the preliminary hearing was an error, it was cured by the fair trial Al Muthafar was later afforded, at which K.S. testified and was subject to cross-examination. Further, unlike a preliminary hearing, where only a finding of probable cause is necessary to bind a defendant over, the jury found Al Muthafar guilty by the much higher "beyond a reasonable doubt" standard. Therefore, we will not disturb the jury's verdict.

**C. The district court did not abuse its discretion in sentencing Al Muthafar to a prison term of fifteen years with five years fixed.**

Al Muthafar's final argument is that the district court abused its discretion by imposing an excessive sentence. Al Muthafar contends that his "total unified term . . . is excessive in light of the mitigating factors present in his case." As mitigating factors supporting a less-severe

sentence, Al Muthafar points to the severe trauma he suffered while growing up in the war-torn country of Iraq, during the Iran-Iraq war in the 1980s, and his numerous mental health concerns. He also notes his support from friends and community mitigates against a "severe sentence." Rather than requesting the case be remanded for a new sentencing determination as a remedy, Al Muthafar requests that this Court reduce his sentence as it deems appropriate.

In response, the State contends that the district court carefully considered the four objectives of sentencing—protection of society, deterrence, rehabilitation, and punishment—and that in light of these goals, the sentence was reasonable. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982); *State v. Bailey*, 161 Idaho 887, 895–96, 392 P.3d 1228, 1236–37 (2017). Likewise, given that Al Muthafar's domestic violence evaluation concluded that he was "a moderate risk to re-offend" and a "high risk for future violence," the State argues that the district court acted well within its discretion to impose a unified sentence of fifteen years, with five years fixed. We agree.

The length of a sentence is reviewed under an abuse of discretion standard considering the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007); *State v. Huffman*, 144 Idaho 201, 159 P.3d 838 (2007). In *Oliver*, the defendant pleaded guilty to driving while under the influence of alcohol and/or drugs (a felony) and was sentenced to five years with one year fixed. 144 Idaho at 724, 170 P.3d at 389. Like Al Muthafar, Oliver challenged the indeterminate part of his sentence, arguing that it was "excessive in light of mitigating circumstances . . . ." *Id.* at 727, 170 P.3d at 392. Oliver pointed to several mitigating factors including: his age, his military service, his physical and mental impairment, his minimal criminal history, and his seeking treatment for his alcoholism. *Id.* We affirmed the district court's sentence, reasoning that, "[t]hese factors do not indicate any abuse of discretion by the district court. In fact, they show the proper exercise of discretion" because not only was Oliver an alcoholic who had received three convictions for driving while under the influence, but his subsequent arrest resulted from his "[going] on a bender" where he had to be hospitalized for alcohol detoxification. *Id.*

Here, the district court did not abuse its discretion by imposing a unified term of fifteen years with five years fixed. The record demonstrates that the district court properly contemplated the objectives of sentencing—the protection of society, deterrence, rehabilitative opportunities, and punishment or retribution. *Toohill*, 103 Idaho at 568, 650 P.2d at 710. *See also* I.C. § 19-

2521. Furthermore, the court considered "all the information, material and recommendations available," and fairly weighed the present aggravating and mitigating factors. With respect to aggravating factors, the district court noted,

> Defendant does have an LSI of 25; meaning a moderate risk to re-offend. Apparently [sic] he has no substance abuse issues; though I question the validity of that finding. Appears to have some significant depression, anxiety and PTSD . . . Also noted traits of antisocial personality disorder, malingering and traumatic brain injury.
>
> Defendant has no prior felony convictions, but does have a long history of misdemeanor offenses, including several violent misdemeanors.
>
> The charges in this case are very serious. Defendant has never accepted any responsibility, continues to deny all the charges. Claims that the victim has lied about everything.

The district court also commented on the finding in the domestic violence reports that Al Muthafar had a "high risk for future violence" and expressed concern regarding the defendant's lack of remorse for the victim. While not enumerated as an aggravating factor, there were also the medical reports that Al Muthafar was malingering by faking hallucinations in order to avoid sentencing.

> With respect to the mitigating factors, the district court recognized that

> the victim previously made similar charges against the defendant and later recanted. Then he has good letters of support from local Imams, who say he's a good and kind man and helps many others. He has letters of support from friends as well. No current substance abuse issues, but I'm aware of his affinity for Adderall . . . . And his arguments that he hasn't used any alcohol for years and years despite at least two DUI's in his past history.

> Looking at the severity of the charges, the determination that Al Muthafar is a "high risk for future violence," and his refusal to accept responsibility, the district court reasonably determined that the aggravating factors outweighed the enumerated mitigating factors and imposed a significant prison term. In balancing these factors, the district court stated that under the circumstances, the sentence "is just, fair and reasonable given the objectives of sentencing and all the unique factors of this case." We agree. The district court carefully considered and articulated the various factors and imposed a reasonable sentence. Therefore, there was no abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, we affirm Al Muthafar's judgment of conviction for aggravated assault and attempted strangulation. Likewise, Al Muthafar's unified sentence of fifteen years with five years determinate is affirmed.

Chief Justice BEVAN and Justices BRODY, ZAHN and MEYER CONCUR.